# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 04-625


**SAMUEL ALEXANDER, ET AL.**

**VERSUS**

**THIOKOL CORPORATION, ET AL.**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 91528
HONORABLE KEITH RAYNE JULES COMEAUX, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***


**JOHN D. SAUNDERS**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***


Court composed of Sylvia R. Cooks, John D. Saunders, and Oswald A. Decuir, Judges.


**REVERSED AND REMANDED.**

**Scott R. Bickford**
**Martzell & Bickford**
**338 Lafayette St.**
**New Orleans, LA 70130**
**(504) 581-9065**
**Counsel for: Defendant/Appellee**
**Kali A. Anderson**
**Samuel August**
**Chadwick August**
**Dawn R. August**

**Edward Paul Landry**
**Landry & Watkins**
**P. O. Drawer 12040**
**New Iberia, LA 70562-2040**
**(337) 364-7626**
**Counsel for: Defendant/Appellee**
**Continental Casualty Company**

**Stephen Porter Hall**
**Phelps Dunbar, L.L.P.**
**365 Canal St., Suite 2000**
**New Orleans, LA 70130-6534**
**(504) 566-1311**
**Counsel for: Defendant/Appellee**
**Certain Underwriters at Lloyd's London**

**Richard M. Simses**
**Abbott, Simses, & Kuchler**
**1360 Post Oak Blvd., #1700**
**Houston, TX 77056**
**(713) 627-9393**
**Counsel for: Defendant/Appellee**
**The Home Insurance Company**

**Patrick J. Hanna**
**Rabalais, Hanna, & Hays**
**701 Robley Dr., #210**
**Lafayette, LA 70503**
**(337) 981-0309**
**Counsel for: Defendant/Appellee**
**Nelson P. Stelly**
**Sidney Martin**
**Vernon L. Langlinais**

**Scott C. Seiler**
**Liskow & Lewis**
**701 Poydras St., Suite 5000**
**New Orleans, LA 70139-5099**
**(504) 581-7979**
**Counsel for: Defendant/Appellee**
**Morton Salt Company**
**Morton Thiokol**
**Morton Chemical Company**

**Gordon Peter Wilson**
**Lugenbuhl, Burke, Wheaton et al.**
**601 Poydras Street, Ste 2775**
**New Orleans, LA 70130**
**(504) 568-1990**
**Counsel for: Defendant/Appellee**
**Travelers Casualty & Surety Company**

**Christopher Luke Edwards**
**Assistant District Attorney**
**15th Judicial District Court**
**P. O. Box 3306**
**Lafayette, LA 70502**
**(337) 232-5170**
**Counsel for: Plaintiff/Appellant**
**Samuel Alexander, et al**

**Kyle Patrick Polozola**
**George H. Robinson, Jr.**
**Liskow & Lewis**
**P. O. Box 52008**
**Lafayette, LA 70505**
**(337) 232-7424**
**Counsel for: Defendant/Appellee**
**Morton Thiokol**
**Morton Salt Company**
**Morton Chemical Company**

**SAUNDERS, J.**

Plaintiffs are appealing the trial court's grant of a peremptory exception of no cause of action, thus dismissing the case. We reverse the trial court's decision to grant the exception of no cause of action.

**FACTS**

Between 1945 and approximately 1990, the plaintiffs or their decedents, were employed by Morton, the defendant. On July 9, 1999, the plaintiffs filed a lawsuit based on claims arising out of exposure to asbestos and silica.

Of the original plaintiffs, only seventeen were listed as plaintiffs on this appeal. Defendants to this appeal are Morton International, Inc., Thiokol Corporation, Morton Thiokol, Morton Chemical Company, and Morton Salt Company. Collectively, these defendants are referred to as Morton. Morton International, Inc., is the successor to the other companies. One of the named defendants is Thiokol Corporation, which manufactured and distributed allegedly defective protective equipment that claimants occasionally used.

In the initial pleadings, the plaintiffs allege intentional torts and negligence on behalf of the defendants. Plaintiffs allege that due to exposure to asbestos and silica and the use of defective equipment, some of the plaintiffs have died or contracted cancer, some have the fear of cancer, while others have differing ailments; thus, the reason for this case. Plaintiffs filed suit for general, specific and punitive damages, as well as medical monitoring.

**PROCEDURAL FACTS**

Plaintiffs filed suit on July 9, 1999, alleging negligence and intentional torts. On August 30, 1999, the defendant, Morton, filed a peremptory exception of no cause

of action. The exception was heard on July 21, 2003. The judge signed a judgment

granting the exception on August 20, 2003. On March 2, 2004, the plaintiffs filed a

devolutive appeal based on the granting of the exception. However, the judgment of

August 20, 2003, was not certified as a final and appealable judgment until May 20,

2004.

## ASSIGNMENT OF ERRORS

The plaintiffs contend that the trial court erred in maintaining Morton's peremptory exception of no cause of action, and finding that Morton is statutorily immune from plaintiffs' claims under the exclusivity provisions of the Louisiana Workers' Compensation Act, LSA-R.S. 23:1032.

## LAW AND ANALYSIS

In reviewing a trial court's grant of a peremptory exception of no cause of

action, the appellate court's standard of review is de novo.

The peremptory exception of no cause of action is designed to test the legal sufficiency of the petition by determining whether plaintiff is afforded a remedy in law based on the facts alleged in the pleading. No evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action. The exception is triable on the face of the papers and for the purposes of determining the issues raised by the exception, the well-pleaded facts in the petition must be accepted as true. On review, we consider the matter *de novo*, as the exception presents a question of law. [Citations omitted]

*Sterling v. Shirely*, 02-0915, p. 3 (La.App. 3 Cir. 12/11/02), 832 So.2d 1179, 1181-82.

"Any reasonable doubt concerning the sufficiency of the petition must be resolved in

favor of finding a cause of action stated." *Thomas v. Armstrong World Indus.,* 95-

2222 (La.App. 1 Cir. 6/28/96), 676 So.2d 1185, 1187, *writ denied,* 96-1965 (La.

11/1/96), 681 So.2d 1272.

## PRELIMINARY MATTERS

2

The defendants contend that the judgment on review is not properly certified as an appealable partial final judgment. However, Louisiana Code of Civil Procedure article 1915B(1) designates when a partial judgment is final and appealable.

> When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, or theories, whether in an original demand, reconventional demand, cross-claim, third party claim, or intervention, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.

The appeal before us is a proper partial final judgment. The judgment states, "[i]t is further ordered, adjudged, and decreed, that there being no just reason for delay, this Judgment is hereby designated and certified as a final and appealable Judgment." All that La.Code Civ.P. art 1915B(1) requires is an "express determination that there is no just reason for delay." This judgment clearly states that and designates it as final. Therefore, this appeal was properly certified as an appealable partial final judgment.

**ASSIGNMENT OF ERROR**

The plaintiffs argue that the trial court erred in maintaining the defendants' peremptory exception of no cause of action. The defendants argue that the plaintiffs' claims are barred by statutory immunity in Louisiana Revised Statute 23:1032, and thus the trial court was correct in granting the no cause of action exception.

Louisiana Revised Statute 23:1031.1(A) Occupational Disease, has undergone significant changes since 1952.

> In 1952, the legislature provided for the coverage of occupational diseases under Louisiana's workers' compensation law. La.Rev.Stat. 23:1031.1(A) (1952). The statute defined "occupational disease" by identification, stating in part that "an occupational disease shall include *only* those diseases hereinafter listed when contracted by an employee in the course of his employment as a result of the nature of the work

3

performed." La.Rev.Stat. 23:1031.1(A) (1952) (emphasis added). This "exclusive list," as we observed in *O'Regan v. Preferred Enterprises, Inc.,* 98-1602, p.6 (La.3/17/00), 758 So.2d 124, 129 (on rehearing), included diseases caused by contact with specific substances, namely the diseases of contact poisoning from enumerated sources, asbestosis, silicosis, dermatosis, and pneumoconiosis. La.Rev.Stat. 23:1031.1(A) (1952). In 1958, by Acts 1958, No. 39, the legislature added tuberculosis as one of the specified occupational diseases for certain hospital workers. La.Rev.Stat. 23:1031.1(A) (1958). Although the 1952 and 1958 enactments listed specific occupational diseases, in 1975 by Acts 1975, No. 583, § 2, the legislature revised La.Rev.Stat. 23:1031.1(A) by removing the list of specific diseases for which there was coverage under workers' compensation and substituting the following definition:

> An occupational disease shall mean only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease.

*Austin v. Abney Mills Inc.,* 01-1598, p. 3 (La. 9/4/02), 824 So.2d 1137, 1140, *rehearing denied* (La. 9/23/02). Prior to 1952, there was no coverage for occupational diseases linked to asbestos.

The plaintiffs refer us to the Louisiana Civil Law Treatise on Workers' Compensation by Malone & Johnson for the proposition that occupational diseases were not barred by workers' compensation legislation prior to 1952.

> Though there was early opinion to the contrary, it was finally held that since the act provided no coverage whatsoever for occupational disease, the employee would enjoy no compensating advantage for the surrender of any tort rights he might have had, and should therefore be free to proceed against the employer in tort. This principle retained some importance even after the introduction of occupational disease coverage in the Act in 1952, since the legislature at that time chose a schedule approach to coverage. Hence, certain diseases not in the schedule probably remained subject to tort proceedings. With the 1975 amendments providing general occupational disease coverage under the Act, however, there would remain no occasion to litigate such matters in tort proceedings against the employer. Thus the 1976 amendments to La. R.S. 23:1032 merely reflected that the exclusive remedy of an

4

employee now applies to occupational disease as well as injury. As we shall see later, however, the concept of permitting a tort recovery when the employment-related incident is not covered by the Act has never entirely disappeared.

Malone & Johnson, Workers' Compensation § 361 at 143-144 (Louisiana Civil Law Treatise, Vol. 14, 2002).

In *Austin,* 824 So.2d at 1145, the court recognized this principle, stating:

[T]his general rule applies in the context of workers' compensation and occupational diseases as well. Where the act provides no coverage for an occupational disease, the employee enjoys no compensating advantage for the surrender of any tort rights he might have; therefore, he is free to proceed against his employer in tort. *See* Malone & Johnson, *supra*, § 361, p. 151 (West 1994). Thus, if the employee acquires a right to sue in tort for a non-covered occupational disease, he cannot later be divested of that right by subsequent legislative expansion of coverage for occupational disease. The Fourth Circuit recently upheld that principle when it held that, because the pre-1975 version of La.Rev.Stat. 23:1031.1 did not include mesothelioma as a covered disease or asbestos as a substance that caused disease, the plaintiffs were not precluded from pursing a negligence action against their employer. *Callaway v. Anco Insulation, Inc.,* 98-0397 (La.App. 4 Cir. 3/25/98), 714 So.2d 730, *writ denied,* 98-1034 (La. 11/19/99), 749 So.2d 666.

This Louisiana Supreme Court case endorses the principle that a plaintiff who contracts an occupational disease has a right to sue in tort when the workers' compensation act does not provide coverage for that disease. *Austin* also acknowledged the Fourth Circuit's position that prior to 1975, there was no coverage for mesothelioma or exposure to asbestos, and therefore, the plaintiff could pursue an action in negligence. "If the claim of plaintiff, therefore, is not within the compensation statute, certainly he may enforce his rights under the general law of torts. . ." *Clark v. Southern Kraft Corp.*, 200 So. 489, 491 (La.App. 2 Cir. 11/19/40), *writ denied,* (La. 3/3/41).

5

In *Callaway v. Anco Insulation, Inc.*, 98-0397, p. 3 (La.App. 4 Cir. 3/25/98), 714 So.2d 730, 731, *writ denied,* 98-1034 (La. 11/19/99), 749 So.2d 666, the plaintiff brought a survival action in which he alleged exposure to asbestos between 1947 and 1977. "[T]he plaintiff's survival action is governed by the workers' compensation statute which was in effect at the time the decedent was exposed to asbestos." Also, in *Bourgeois v. A.P. Green Indus.* 02-713, (La.App. 5 Cir. 2/25/03), 841 So.2d 902, 909, *writ denied,* 04-1621 (La. 7/16/04), 877 So.2d 991, the Fifth Circuit stated, "in resolving latent long-term toxic torts courts must apply the law that was in effect at the time of the significant causative exposure." They also stated, "[t]hose plaintiffs whose significant exposure was pre-1952, before asbestosis was a covered occupational disease, have an assertable negligence cause of action against Avondale and Avondale's executive officers." *Id.* at 909-10.

In *Gautreaux v. Rheem Manuf. Co.,* 96-2193 (La.App. 4 Cir. 12/27/96), 694 So.2d 977, 978, *writ denied,* 97-0222 (La. 3/14/97), 690 So.2d 39. the plaintiff filed suit on behalf of the decedent, Charles Gautreaux, who was employed with Rheem Manufacturing Company from 1946 to 1982. During that time he was exposed to asbestos. Mr. Gautreaux died of lung cancer allegedly caused from the asbestos exposure. The court stated:

> Prior to amendment in 1975, Section 1031.1 of Title 23 listed various occupational diseases that were covered by workers' compensation and also listed certain substances that, when they caused disease as a result of occupational exposure, that disease would also be covered by workers' compensation. Lung cancer was not a listed disease and asbestos was not a listed substance although asbestosis was a listed disease.

The defendants argue that the plaintiffs did not contend that they had any

6

significant asbestos exposure prior to 1952. However, the defendants are mistaken as the plaintiffs clearly argued pre-1952 exposure to asbestos. The plaintiffs argue in the First Supplemental and Amending Petition for Damages:

> From approximately 1938 to 1990, Petitioners were employed by MORTON during which time they were required to handle large quantities of asbestos, and as a result, they were exposed to asbestos and silica containing products and at times used protective devices and equipment manufactured and distributed by Thiokol. Petitioners were continuously exposed to raw blue asbestos while in the areas where the raw asbestos were being mixed with water to form a paste with which lids of sale reactors were sealed. Additionally, they were instructed to clean up asbestos waste on the floors of the MORTON facility by sweeping in their and others' work areas. They were exposed to dust emanating from the asbestos being used by other workers employed by MORTON. Finally, Petitioners sustained substantial occupational exposure to asbestos and/or silica while employed at Morton.

In the original appellate brief, the plaintiffs argue:

> In the instant matter, as a result of exposure to asbestos, Plaintiffs/Appellants have contracted, among other things, pneumoniosis, and/or pleural thickening, a precursor to mesothelioma, clearly **NOT** covered by the Act prior to 1975. Furthermore, at the time Plaintiff/Appellants were exposed to asbestos and consequently, acquired their right to sue in tort, asbestos was not covered by the Act as a substance that caused disease.

Our review of the record reveals that some of the plaintiffs were employed by the defendants and exposed to asbestos prior to 1952. Thus, those plaintiffs have a cause of action. However, the record is not specific as to which plaintiffs were employed and exposed prior to 1952, and therefore, that determination must be made at the trial court level when further information is provided. Arguments affecting those employed and possibly exposed after 1952 will also be addressed by the trial court.

7

**CONCLUSION**

In reviewing a peremptory exception of no cause of action, the appellate court looks at the allegations in the petition to determine if based on that alone, the plaintiffs would be entitled to relief.  Based on the pleadings of record, the trial court incorrectly granted the defendants' peremptory exception of no cause of action.  We therefore reverse the trial court's grant of the peremptory exception of no cause of action and remand this case for further proceedings consistent with this opinion. Costs of this appeal are assessed to the defendants.

**REVERSED AND REMANDED.**