971 So.2d 1058 (2007)
Sadie Mae TERRANCE, et al.
v.
THE DOW CHEMICAL COMPANY, et al.
No. 2006 CA 2234.
Court of Appeal of Louisiana, First Circuit.
September 14, 2007.
Writ Denied December 14, 2007.
*1060 Lewis O. Unglesby, Robert M. Marionneaux, Jr., John F. McKay, Baton Rouge, *1061 for Plaintiffs-Appellees, Sadie Mae Terrance, et al.
Gary A. Bezet, Barrye P. Miyagi, Gregory M. Anding, Carol L. Galloway, Alicia M. Wheeler, Baton Rouge, for Defendant-Appellant, Exxon Mobil Corporation.
Before: CARTER, C.J., PETTIGREW, and WELCH, JJ.
CARTER, C.J.
This survival action involves a claim by the estate and surviving spouse of James Terrance (Mr. Terrance) against Exxon Mobil Corporation (Exxon). The lawsuit asserts damages based upon Mr. Terrance's contraction of and death from mesothelioma, a long-latency disease resulting from exposure to asbestos-containing products (ACPs). Plaintiffs[1] initially filed suit against numerous defendants, including manufacturers and distributors of the ACPs, general labor contractors for whom Mr. Terrance was previously employed, and a variety of premises owners, including Exxon, where Mr. Terrance was allegedly exposed to the ACPs. However, all defendants settled with plaintiffs or were dismissed prior to trial except Exxon.
After a six-day jury trial, the jury awarded general damages in the sum of $5,000,000.00 for Mr. Terrance's survival claim, plus past medical expenses and lost wages.[2] Exxon's motions for judgment notwithstanding the verdict (JNOV), and alternatively, for new trial or remittitur were denied by the trial court, and judgment was rendered in accordance with the jury verdict. Exxon appeals, asserting ten assignments of error. For the following reasons, we affirm.

BACKGROUND
During the years of 1964 through 1970, Mr. Terrance worked at the Baton Rouge Exxon refinery as a maintenance/laborer for two different employers at different times, Jacobs Constructors (Jacobs) and Nichols Construction Company (Nichols). Exxon contracted with a variety of construction companies such as Nichols and Jacobs for maintenance and construction work at the Exxon refinery. Most of the contract jobs lasted two-to-three months with eight-hour shifts in what was commonly referred to as "turn-around" projects. The work that Mr. Terrance performed at Exxon involved the chipping and stripping of insulation off of pipes, as well as the clean up and disposal of the old insulation material. All of the work was done in preparation for new insulation to be installed around the pipes. The old insulation contained asbestos, which became very dusty as it was stripped, gathered, and disposed of. As a result, Mr. Terrance was routinely exposed to asbestos dust and fibers while working at the Exxon refinery. During these same years, Mr. Terrance also worked at other oil and gas refineries, including Dow Chemical Company (Dow), performing various maintenance/labor jobs, but not the routine handling of large quantities of insulation containing asbestos.
In September 2001, Mr. Terrance was diagnosed with mesothelioma. He died *1062 four months later, on January 30, 2002. Mesothelioma is a fatal cancer of the lining of the lungs; it is almost always associated with exposure to ACPs. Mesothelioma is a long-latency disease, meaning that it does not manifest itself until anywhere from twenty-to-forty years after significant exposure to asbestos.
After Mr. Terrance's death, his surviving spouse and adult children (plaintiffs) filed a wrongful death and survival action suit individually, and on behalf of Mr. Terrance's estate, against the manufacturers and distributors of the ACPs to which Mr. Terrance had been exposed, Mr. Terrance's various employers, and the numerous premises owners where Mr. Terrance was exposed to the ACPs. The lawsuit alleged that due to the negligence, strict liability, and/or intentional acts of the defendants, Mr. Terrance had contracted and died from mesothelioma as a result of his significant exposure to ACPs. At the time of trial, only Exxon remained as a defendant and the only claim at trial involved Mr. Terrance's survival action.
Before trial, the trial court made a legal determination that Mr. Terrance's claim against the premises owners (Exxon and Dow) was not barred by the Louisiana Workers' Compensation Act (LWCA) because Mr. Terrance did not qualify as a statutory employee of the premises owners, and because mesothelioma was not a covered occupational disease under the version of the LWCA in effect at the time of Mr. Terrance's exposure to asbestos. After trial, the jury returned a verdict in favor of the plaintiffs, finding that Mr. Terrance's mesothelioma was caused by his exposure to asbestos. On the verdict form, the jury was asked to determine whether Mr. Terrance was at fault; whether Mr. Terrance's employers, Jacobs and/or Nichols, were at fault; whether the manufacturers and distributors of the ACPs, Johns-Manville Corporation, Eagle Pitcher, HK Porter, and Foster Wheeler Corporation, were at fault; and whether Exxon and/or Dow were at fault. The jury unanimously found that Exxon was solely at fault in causing Mr. Terrance's mesothelioma and resulting death. The jury awarded total general damages in the amount of $5,000,000.00. Exxon's motions for JNOV and new trial or remittitur were denied, judgment was rendered in accordance with the jury verdict, and Exxon's appeal followed.

LAW OF THE CASE DOCTRINE
Exxon's first assignment of error alleges that the trial court erred in requiring that the trial resume with an eleven-member jury after one juror was unable to return to serve on the jury when he suffered a heart problem during the trial. Twelve jurors were impaneled on May 23, 2006, with no provision for alternate jurors. On the fifth day of trial, May 30, 2006, one of the jurors experienced chest pain during the trial. The juror was sent to the emergency room, and the trial court was informed on May 31, 2006, that the juror could not return to jury duty. Over Exxon's objection, the trial court directed that the trial resume with the eleven remaining jurors. Exxon moved for a mistrial, arguing that there was no stipulation by the parties to proceed with less than twelve jurors pursuant to LSA-C.C.P. art. 1761 B. The trial court denied Exxon's motion, but stayed the proceedings to allow Exxon to apply for a supervisory writ to this court.
On June 1, 2006, this court issued an interim order to the trial court directing that a hearing be conducted to determine whether the juror would eventually be able to return to complete his service on the jury. A hearing was held on June 9, 2006, after which the trial court reported to this *1063 court that the juror would not be able to return for jury service due to a verified medical condition. As a result, this court ruled in favor of Exxon and granted a mistrial on June 14, 2006, thereby reversing the trial court, citing LSA-C.C.P. art. 1761, and stating that "[a]bsent a stipulation of the parties to proceed with less than twelve jurors, the loss of a juror results in a mistrial."[3] The next day, the plaintiffs filed an emergency writ with the Louisiana Supreme Court, and on June 19, 2006, the supreme court summarily reversed this court's ruling and reinstated the trial court's denial of Exxon's motion for mistrial.[4] The trial resumed on June 21, 2006, with the remaining eleven jurors who eventually reached a unanimous verdict against Exxon.[5]
Because this court and the supreme court have previously addressed the propriety of an eleven-member jury in this case, we must consider whether the doctrine of the "law of the case" precludes us from considering Exxon's first assignment of error. This doctrine applies to all prior rulings or decisions of an appellate court or the supreme court in the same case, not merely those arising from the full appeal process. Dodson v. Community Blood Center of Louisiana, Inc., 92-2068 (La. App. 1 Cir. 11/24/93), 633 So.2d 252, 255, writs denied, 93-3158, 93-3174 (La.3/18/94), 634 So.2d 850, 851. This doctrine applies to parties who were parties to the case when the former rulings were rendered and who thus had their day in court. The law of the case doctrine avoids relitigation of the same issue, promotes consistency of results, and encourages efficiency and fairness to the parties by affording a single opportunity for the argument and decision of the matter at issue. Id.
We are convinced that the past action of the supreme court, reinstating the trial court's denial of Exxon's motion for mistrial and allowing the trial to continue with an eleven-member jury, precludes relitigation of this issue. The parties to the prior motion, writ applications, and this appeal are the same. The arguments and issues raised in this assignment of error are the same as those raised in the earlier-filed motion and writ applications. The citations to articles, statutes, and case law are the same. Thus, we conclude that reargument of this previously-decided issue is barred. All that is being raised by Exxon at this point is doubt as to the correctness of the ruling made by the supreme court. Considering the unanimous verdict and no obvious injustice, we will not question the accuracy of the former supreme court ruling in this case. See Held v. Aubert, 02-1486 (La.App. 1 Cir. 5/9/03), 845 So.2d 625, 639 (quoting from Louisiana Land and Exploration Company v. Verdin, 95-2579 (La.App. 1 Cir. 9/27/96), 681 So.2d 63, 65, writ denied, 96-2629 (La.12/13/96), 692 So.2d 1067, cert. denied, 520 U.S. 1212, 117 S.Ct. 1696, 137 L.Ed.2d 822 (1997)). See also Brumfield v. Dyson, 418 So.2d 21, 22 (La.App. 1 Cir.), *1064 writ denied, 422 So.2d 162 (La.1982). Therefore, by operation of the law of the case doctrine, we decline review of Exxon's first assignment of error.

TRIAL COURT RULINGS
Three of Exxon's assignments of error involve the propriety of pretrial rulings and/or rulings made by the trial court before the case was submitted to the jury. Exxon asserts that: (1) the trial court erred initially when it found that mesothelioma was not a compensable occupational disease under the LWCA in effect at the time of Mr. Terrance's alleged significant exposure, that it erred again when it decided that Exxon was not Mr. Terrance's statutory employer, and that it also erred in not submitting these questions to the jury; (2) the Johns-Mansville Trust Fund should have been deemed a legally responsible party and the jury so informed; and (3) Anco Insulations, Inc. (a distributor and installer of ACPs at Exxon) should have been included on the jury verdict form. We will individually address each of Exxon's attacks on these various trial court rulings.
Compensable Occupational Disease / Statutory Employer
Exxon argues that the trial court committed legal error when it ruled that mesothelioma was not a compensable occupational disease under the LWCA in effect at the time of Mr. Terrance's significant exposure to ACPs.[6] Exxon argues that because the parties stipulated that asbestos is a compound of both oxygen and metal, both of which are specifically mentioned in the definition of occupational diseases in the pertinent version of the LWCA, and mesothelioma is caused by exposure to asbestos, then mesothelioma must be a compensable occupational disease and Mr. Terrance's exclusive remedy is under the LWCA.
Exxon relies on Brunet v. Avondale Industries, Inc., 99-1354 (La.App. 5 Cir. 12/5/00), 772 So.2d 974, writ not considered, 01-0171 (La.3/23/01), 787 So.2d 1006, for this argument. In Brunet, the plaintiff developed lung cancer from asbestos exposure. Like mesothelioma, lung cancer was not a specifically-listed disease in the pertinent version of the LWCA. However, the Brunet court recognized lung cancer as an occupational disease under the second definition in the statute, as a disease caused by contact with an oxygen/metal compound. Id., 772 So.2d at 979. Exxon argues that the legislature would not have intended to cover only some asbestos-related diseases (such as asbestosis), but not others (such as mesothelioma and lung cancer). Exxon reasons that any other interpretation of the LWCA would be absurd since asbestos exposure can lead to different diseases in different people, and during the pertinent time frame, limited knowledge regarding diseases caused by exposure to asbestos requires a broad reading of the LWCA.
Exxon relies on other cases that follow the reasoning outlined in the Brunet case, wherein the courts found compensable occupational diseases even though the diseases were not specifically enumerated in the statute, but were caused by contact with a listed substance. See Adams v. Asbestos Corp. Ltd., 39,952 (La.App. 2 Cir. 10/28/05), 914 So.2d 1177, 1182-1183. Following this argument, Exxon contends that because mesothelioma is covered under the LWCA, the issue of whether Exxon was Mr. Terrance's statutory employer . . . entitled to statutory immunity to tort liability . . . should have been submitted to the jury.
*1065 Initially we note our disagreement with Exxon's statement that the issue of Exxon's statutory employer status should have been submitted to the jury. The determination of whether a principal is a statutory employer entitled to immunity is a question of law for the court to decide. Jackson v. St. Paul Ins. Co., 04-0026 (La.App. 1 Cir. 12/17/04), 897 So.2d 684, 688, writ denied, 05-0156 (La.3/24/05), 896 So.2d 1042; Maddox v. Superior Steel, 00-1539 (La.App. 1 Cir. 9/28/01), 814 So.2d 569, 572. Likewise, the question of whether a disease is compensable under the LWCA is a legal determination involving interpretation of a statute. See Lirette v. Patterson Services, Inc., 05-2654 (La.App. 1 Cir. 11/17/06), 951 So.2d 223, 226. Therefore, we find it was proper for the trial court rather than the jury to resolve these legal issues. See Emery v. Owens-Corporation, 00-2144 (La.App. 1 Cir. 11/9/01), 813 So.2d 441, 447, writ denied, 02-0635 (La.5/10/02), 815 So.2d 842. Furthermore, we review questions of law under the de novo standard of review, without deference to the legal conclusions of the tribunals below. Holly & Smith Architects, Inc. v. St. Helena Congregate Facility, Inc., 06-0582 (La.11/29/06), 943 So.2d 1037, 1045; Farmco, Inc. v. Wilson, 05-2132 (La.App. 1 Cir. 10/25/06), 944 So.2d 665, 667.
The interpretation of a statute starts with the language of the statute itself. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation may be made in search of the intent of the legislature. In addition, courts are bound to give effect to all parts of a statute and cannot give a statute an interpretation that makes any part superfluous or meaningless, if that result can be avoided. Holly & Smith Architects, 943 So.2d at 1045 (quoting from Louisiana Municipal Association v. State, 04-0227 (La.1/19/05), 893 So.2d 809, 836-837).
Prior to its amendment in 1975, LSA-R.S. 23:1031.1 listed various occupational diseases that were covered by workers' compensation and also listed certain substances that, when they caused disease as a result of occupational exposure, that disease would also be covered by workers' compensation. Mesothelioma was not a listed disease and asbestos was not a listed substance, although asbestosis was a listed disease. The enumerated substances, however, referred to oxygen nitrogen, and carbon and their compounds, and metals other than lead and their compounds. See the 1952 version of LSA-R.S. 23:1031.1 A(1)(d) & (g).[7] Therefore, relying upon the stipulation that asbestos is a compound of both oxygen and metal, Exxon argues the trial court erred in ruling that mesothelioma was not a compensable occupational disease. We disagree with this argument and note that the issue is not as clear as Exxon contends.
The Louisiana Supreme Court has yet to definitively decide whether mesothelioma fits within the 1952 statute's definition of occupational disease such that an employer of a worker who contracted this asbestos-related disease after 1952 but before *1066 1975 would be entitled to tort immunity. See Powell v. Weaver, 01-2937 (La.2/7/03), 841 So.2d 742, 744 (Wiemer, J. concurrence); Graves v. Riverwood International Corp., 41,810 (La.App. 2 Cir. 1/31/07), 949 So.2d 576, 585-586, writ denied, 07-0630 (La.5/4/07), 956 So.2d 621. The current jurisprudence reveals a conflict in the courts of appeal. There is a line of cases following Brunet (Exxon's position) in the fifth and second circuits. See Adams, 914 So.2d at 1182-1183. However, this circuit, the third circuit, and the fourth circuit have reached the opposite conclusion, holding that because the pre-1975 version of LSA-R.S. 23:1031.1 did not include mesothelioma or lung cancer as a covered disease or asbestos as a covered substance that caused disease, a tort action against the employer was not precluded. See Alexander v. Thiokol Corp., 04-625 (La.App. 3 Cir. 11/10/04), 887 So.2d 685, 688-689 (citing Malone & Johnson, Workers' Compensation § 361 at 143-144 (Louisiana Civil Law Treatise, Vol. 14, 2002)); Callaway v. Anco Insulation, Inc., 98-0397 (La.App. 4 Cir. 3/25/98), 714 So.2d 730, 732, writ denied, 98-1034 (La.11/19/99), 749 So.2d 666; Gautreaux v. Rheem Mfg. Co., 96-2193 (La.App. 4 Cir. 12/27/96), 694 So.2d 977, 979, writ denied, 97-0222 (La.3/14/97), 690 So.2d 39; Johnson v. Ashland Oil, Inc., 96-0323 (La.App. 1 Cir. 12/20/96), 684 So.2d 1156, 1158, writ denied, 97-0206 (La.3/14/97), 690 So.2d 37; Thomas v. Armstrong World Industries, Inc., 95-2222 (La.App. 1 Cir. 6/28/96), 676 So.2d 1185, 1187, writ denied, 96-1965 (La.11/1/96), 681 So.2d 1272. We are bound and persuaded by this line of cases cited repeatedly in our circuit, and we specifically reject the rationale in Brunet and Adams of the fifth and second circuits. While asbestos does contain oxygen and metal, all compounds that contain oxygen and metal are not necessarily covered substances for purposes of former LSA-R.S. 23:1031.1. The broad interpretation proposed by Exxon would allow any disease resulting from contact with any compound containing oxygen or metal to be covered under the LWCA. We believe this inferential-inclusion interpretation goes far beyond the intentions of the legislature. Therefore, we find no error in the trial court's legal conclusion that mesothelioma was not compensable under the LWCA in effect at the time of Mr. Terrance's exposure to ACPs.
Further, in Emery, 813 So.2d at 448, we held that Exxon was not a statutory employer under very similar facts (and under the same version of LSA-R.S. 23:1031.1) where a worker was exposed to ACPs while intermittently working at the Exxon refinery during his employment with an insulation company. Relying on Emery and the specific fact sub judice that in 1961 Exxon began to contract with construction companies to perform all of the work involved with the stripping off and disposing of old insulation from the pipes at the Baton Rouge refinery, we find no error in the trial court's legal conclusion that Exxon was not Mr. Terrance's statutory employer, and therefore, was not immune from tort liability. These assignments of error have no merit.
Settlement with Party not at Trial
Exxon argues that the trial court erred in its ruling that evidence of the plaintiffs' settlement with the Johns-Manville Trust Fund was inadmissible. Generally, the trial court is granted broad discretion on its evidentiary rulings and its determinations will not be disturbed on appeal absent a clear abuse of that discretion. Belle Pass Terminal, Inc. v. Jolin, Inc., 92-1544 (La.App. 1 Cir. 3/11/94), 634 So.2d 466, 476-477, writ denied, 94-0906 (La.6/17/94), 638 So.2d 1094. Exxon contends that because it is undisputed that *1067 the settlement occurred, Exxon should obtain a credit for the trust fund's share of the fault. The plaintiffs argue that Exxon simply desires to substitute a settlement document for proof at trial of Johns-Manville's fault, which is not allowed. We agree with the plaintiffs on this issue and find no error in the trial court's evidentiary ruling.
Exxon, as the sole remaining viable defendant at trial, was only entitled to a reduction of the damage award if the alleged joint tortfeasors, like Johns-Manville, were released from liability and were actually proven to be joint tortfeasors. See Cole v. Celotex Corp., 599 So.2d 1058, 1072 (La.1992); Emery, 813 So.2d at 452.[8] Exxon was required to prove at trial that Johns-Manville negligently caused the plaintiffs' damages. Raley v. Carter, 412 So.2d 1045, 1046 (La.1982).[9] Exxon insists that it should be able to rely on the settlement documents for proof of Johns-Manville's liability. However, LSA-C.E. arts. 408 A and 413 prohibit settlement documents from being admitted into evidence as proof of liability. Therefore, under Articles 408 A and 413, the trial court correctly refused to admit into evidence the settlement documents between the plaintiffs and the Johns-Manville trust fund and the amount compromised. See Rick v. State, Dept. of Transp. and Development, 93-1776 (La.1/14/94), 630 So.2d 1271, 1277 (overruled on other grounds). This assignment of error is without merit.
Jury Verdict Form
Exxon argues that the jury verdict form should have included an option for the jury to find Anco Insulations, Inc. at fault because the jury was presented with evidence that Anco supplied and installed insulation for piping at Exxon during the time period when Mr. Terrance worked at the Exxon refinery. The verdict form reveals that the jury was asked to determine whether Mr. Terrance was at fault, whether Mr. Terrance's employers were at fault, whether various manufacturers and distributors were at fault, and whether Exxon or Dow (as premises owners) were at fault in causing Mr. Terrance's damages. Anco was not specifically listed on the jury verdict form. However, the record reveals that both Exxon and plaintiffs consented to the verdict form after substantial discussion with the trial court and changes were made to the form. Having consented to the verdict form, Exxon cannot now argue on appeal that another entity should have been included in the list of possible responsible manufacturers and/or distributors. Any objections to the jury verdict were waived when Exxon consented to the final version of the form. See Sims v. Ward, 05-0278 (La.App. 1 Cir. 6/9/06), 938 So.2d 702, 709, writ denied, 06-2104 (La.11/17/06), 942 So.2d 535, and Clay v. International Harvester Co., 95-1572 (La.App. 3 Cir. 5/8/96), 674 So.2d 398, 405-406. This assignment of error is without merit.

LIABILITY OF OTHER ENTITIES
Exxon urges three assignments of error contending that the jury erred in failing to determine that Mr. Terrance's employers and the various manufacturers and distributors of the ACPs, as well as the other premises owner (Dow), were also liable for Mr. Terrance's damages. When evaluating liability in an asbestos claim, traditional theories of tort *1068 liability apply, all of which require proof of causation. Emery, 813 So.2d at 452. Whether a person or entity caused another's injuries is a question of fact subject to the manifest error rule. Id. If a jury's factual findings have an evidentiary basis, they must be affirmed on appeal unless manifestly erroneous or clearly wrong. See Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880, 882 (La.1993).
As stated earlier, Exxon was required to prove that the manufacturers and distributors of the ACPs, as well as Dow, negligently caused Mr. Terrance's damages. Raley, 412 So.2d at 1046. This it did not do. Based on our review, the jury's finding that no other entity was at fault is not manifestly erroneous. The record is void of any evidence that any other entity except Exxon actually knew of a causal relationship between asbestos exposure and mesothelioma or any other asbestos-exposure related disease. Multiple witnesses testified that Exxon oversaw all work that was done at the refinery and Exxon had extensive knowledge of the danger of asbestos dust and fibers, yet it did not communicate the danger to the contractors (including Mr. Terrance's employers) or the workers employed by the contractors (such as Mr. Terrance). Although Exxon presented some conflicting testimony about whether the dangers of asbestos dust was actually communicated to the contractors, the evidence of the lack of communication was not completely refuted by Exxon.[10] In fact, the record establishes that some Exxon employees had knowledge dating back to the early 1950's that certain levels of exposure to asbestos dust and fibers could result in injury and disease in the lungs. Moreover, by the early 1960's, asbestos exposure was known by some Exxon employees to cause mesothelioma, yet this information was not definitively communicated to the contractors or the workers. The jury was presented with abundant evidence on the issue of Exxon's knowledge and the lack of communication regarding the dangers of asbestos. Further, the experts characterized Exxon as a "pioneer" in industrial hygiene and safety issues.
All of the expert testimony agreed that asbestos fibers are only dangerous if disturbed and inhaled. To find the manufacturers and distributors liable for Mr. Terrance's exposure to ACPs, Exxon apparently contends that "exposure" means being in the presence of ACPs with no requirement that the asbestos fibers be released and inhaled. However, the evidence does not support this contention. The only evidence showing that Mr. Terrance was significantly exposed to the inhalation of asbestos dust and fibers was during the work he performed at Exxon while he was engaged in an activity that Exxon knew to be dangerous because of the high dust levels emitted when the insulation was stripped, chipped, swept, picked up, and moved.
Evidence of the mere presence of ACPs is insufficient to find the manufacturers and distributors liable to plaintiffs. See Roberts v. Owens-Corning Fiberglas Corp., 03-0248 (La.App. 1 Cir. 4/2/04), 878 So.2d 631, 642, writ denied, 04-1834 (La.12/17/04), 888 So.2d 863. There was no evidence in the record of asbestos dust created by the manufacturers and distributors of the ACPs. Likewise, there was no evidence that Mr. Terrance actually performed the stripping and cleaning insulation work that created asbestos dust at the *1069 Dow refinery.[11] While there was evidence that insulation work was being done at the Dow refinery during some of the time that Mr. Terrance performed manual labor tasks at the refinery, there was no evidence that asbestos dust was created and inhaled by Mr. Terrance at the Dow refinery such that a significant exposure occurred at Dow. The conflicting testimony regarding the sporadic insulation work that occurred near Mr. Terrance at the Dow refinery was obviously rejected by the jury when it contrasted the extensive hands-on daily work that Mr. Terrance performed at Exxon, where he actually inhaled the harmful asbestos dust and fibers with the full knowledge of Exxon.
Based on our review of the evidence, the record clearly establishes a reasonable factual basis to support the jury's finding that the other entities listed on the jury verdict form were not liable for Mr. Terrance's damages. As such, the jury's finding of Exxon's sole liability is not clearly wrong. These assignments of error lack merit.

NEW TRIAL
Exxon argues in two assignments of error that a new trial is warranted because of: (1) misleading and prejudicial statements made by the plaintiffs' counsel during closing argument and (2) erroneous jury instructions. The discretionary power to grant a new trial must be exercised with considerable caution, because a successful litigant is entitled to the benefits of a favorable jury verdict. The jury's verdict should not be set aside if it is supportable by any fair interpretation of the evidence. Campbell v. Tork, Inc., 03-1341 (La.2/20/04), 870 So.2d 968, 970-971; Perkins v. Allstate Ins. Co., 05-2676 (La.11/3/06), 950 So.2d 850, 852 The granting or denying of a motion for new trial rests within the wide discretion of the trial court, and its determination should not be disturbed absent a clear abuse of discretion. Davis v. Wal-Mart Stores, Inc., 00-0445 (La.11/28/00), 774 So.2d 84, 93-94.
Misleading and Prejudicial Statements by Plaintiffs' Counsel
According to Exxon, plaintiffs' counsel made several improper remarks during closing argument, which resulted in prejudice against Exxon and an improper verdict. Specifically, Exxon takes issue with plaintiffs' counsel's reference that Exxon was trying to blame other entities for Mr. Terrance's mesothelioma so that it could "save . . . some money."[12] Exxon objected to the remarks made by plaintiffs' counsel at the end of the opening statement.
The test of whether argument of counsel is prejudicial or inflammatory is whether the comment is unreasonable or *1070 unfair in the eyes of the law. This test is balanced against the well-settled jurisprudence that counsel has great latitude in argument before a jury. This latitude is subject to regulation and control by the court, which has a duty to confine argument within the proper bounds. Breitenbach v. Stroud, 06-0918 (La.App. 1 Cir. 2/9/07), 959 So.2d 926, 931; Cooper v. United Southern Assur. Co., 97-0250 (La. App. 1 Cir. 9/9/98), 718 So.2d 1029, 1038. The trial court is vested with broad discretion in conducting trials in a manner conducive to justice. Breitenbach, 959 So.2d at 931.
We find that the trial court adequately addressed Exxon's concerns by instructing the jury that the statements and arguments made by the attorneys are not evidence. See Sims, 938 So.2d at 709. This instruction was given to the jury both before and after the closing arguments. The trial court further informed the jury before deliberations that they must decide the case without regard to sympathy, prejudice, or passion for or against any party. These instructions given by the trial court served to counteract any possible adverse effects of plaintiffs' counsel's remarks. Id. Therefore, we do not find the jury was unduly prejudiced by the comments. This assignment of error lacks merit.
Erroneous Jury Instruction
Exxon next complains that the trial court committed reversible error when it provided erroneous jury instructions regarding the sophisticated purchaser doctrine, and by doing so, prejudiced Exxon to the extent that a new trial is warranted. We disagree. We find nothing erroneous with the instructions. Exxon specifically contends that because the trial court gave the sophisticated purchaser instruction numerous times, but only once in conjunction with the failure to warn instructions pertaining to manufacturer liability, the jury was confused and Exxon was severely prejudiced by the emphasis on the sophisticated purchaser doctrine. However, Exxon acknowledges that the trial court "eventually . . . gave proper `manufacturer' instructions, setting forth all the theories of manufacturer liability."
Adequate instructions are those that fairly and reasonably point up the issues presented by the pleadings and evidence and that provide correct principles of law for the jury's application. McCrea v. Petroleum, Inc., 96-1962 (La. App. 1 Cir. 12/29/97), 705 So.2d 787, 791. It is the trial court's responsibility to reduce the possibility of confusing the jury. Belle Pass Terminal, 634 So.2d at 488. The adequacy of the instructions must be determined in light of the jury instructions as a whole. Johnson v. Terrebonne Parish Sheriff's Office, 95-1180 (La.App. 1 Cir. 2/23/96), 669 So.2d 577, 582, writ denied, 96-0727 (La.4/26/96), 672 So.2d 907. An appellate court must exercise great restraint before it reverses a jury verdict because of erroneous jury instructions. Nicholas v. Allstate Ins. Co., 99-2522 (La.8/31/00), 765 So.2d 1017, 1023 Accordingly, reviewing the jury instructions in their entirety, we find that the instructions were adequate, well-considered, and not erroneous or prejudicial. This assignment of error is without merit.

DAMAGES
The jury awarded Mr. Terrance $5,000,000.00 in general damages.[13] Exxon argues that this award is abusively high and should be reduced by this court. The trier of fact is given much discretion in the assessment of damages. LSA-C.C. art. 2324.1. Damage awards on appellate review will be disturbed only when there has been a clear abuse of that discretion. Theriot v. Allstate Ins. Co., 625 So.2d 1337, *1071 1340 (La.1993). The initial inquiry must always be directed at whether the trial court's award for the particular injuries and their effects upon this particular injured person is a clear abuse as to the factfinder's much discretion. Emery, 813 So.2d at 457. In Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994), the court stated: "[o]nly after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion." (Citing Coco v. Winston Industries, Inc., 341 So.2d 332, 335 (La.1976).)
The record reflects that Mr. Terrance suffered incredible pain and numerous hospitalizations, painful procedures, nausea, severe weight loss, and fatigue in the few months between his diagnosis and death. Before his diagnosis, Mr. Terrance suffered from a severe cough, shortness of breath, and pain. The powerful pain medication that Mr. Terrance used in the few months before he died only temporarily eased his pain. The medical testimony from Mr. Terrance's physicians described horrible pain with every breath as Mr. Terrance's lungs became increasingly compressed by the growth of the thick tumor encasing his lungs. Mr. Terrance required the use of oxygen for the shortness of breath and a walker for his increased weakness due to fatigue and weight loss, until he was finally confined to bed before he died. Mr. Terrance also suffered from depression due to his knowledge of the incurable disease he was facing. Mr. Terrance was not ready to die; he had a large, loving family. Before his illness, Mr. Terrance was actively involved in hunting, fishing, cooking, and attending/hosting family events. Mr. Terrance suffered from anxiety and worry over the problems that his death was going to cause his wife and family.
The jury heard all of the evidence and made its award. While the award is arguably on the high end of the general damage spectrum, we cannot conclude that the jury abused its vast discretion. Accordingly, Exxon's assignment of error in this regard lacks merit.

CONCLUSION
Finding that reasonable minds could differ, the standard for denying JNOV,[14] and that the jury's verdict is supportable by a fair interpretation of the evidence, as is required for denial of a new trial motion,[15] we find no manifest error in the trial court's denial of Exxon's motions for JNOV and new trial. Therefore, we affirm the trial court's judgment rendered in accordance with the jury verdict. Costs of this appeal are assessed to Exxon.
AFFIRMED.
NOTES
[1] The original plaintiffs were Mr. Terrance's surviving spouse, Sadie Mae Terrance, individually and on behalf of her late husband's estate, and Mr. Terrance's adult children, Katherine Terrance, Sadie Houston, Margaret T. Smith, and James C. Terrance. Before trial, the plaintiffs dismissed their wrongful death claims.
[2] The total amount of damages was $5,055,260.02, plus judicial interest and costs; however, the only amount challenged on appeal is the $5,000,000.00 general damage award.
[3] Sadie Mae Terrance, et al. v. The Dow Chemical Company, et al., 06-1026 (La.App. 1 Cir. 6/14/06)(unpublished writ action)
[4] Sadie Mae Terrance, et al. v. The Dow Chemical Company, et al., 06-1540 (La.6/19/06), 930 So.2d 961 (unpublished writ action).
[5] We note that LSA-C.C.P. art. 1797 B requires that if a trial is by a jury of twelve, only nine of the jurors must concur to render a verdict unless the parties stipulate otherwise. After the supreme court ordered that the case proceed with eleven jurors, the record does not reflect any stipulation by the parties as to the number of jurors who must concur in the verdict. However, a polling of the jury revealed the verdict was unanimous with eleven votes, two votes more than required when there is no stipulation.
[6] Former LSA-R.S. 23:1031.1, in effect prior to 1975.
[7] The parties do not dispute that this case is governed by the version of the law in effect at the time of Mr. Terrance's significant exposure to asbestos, which was pre-1975, post-1952, amendment. See Austin v. Abney Mills, Inc., 01-1598 (La.9/4/02), 824 So.2d 1137, 1154. In 1975 by Acts 1975, No. 588, § 2, the legislature revised LSA-R.S. 23:1031.1 A by removing the list of specific diseases for which there was coverage under the LWCA. The parties do not dispute that since the 1975 amendment, mesothelioma would be included as a compensable occupational disease; however, the 1975 amendment is not relevant to our decision today.
[8] Applying pre-comparative fault law since the plaintiffs' claims occurred prior to the enactment of comparative fault law in 1979.
[9] In the "LIABILITY OF OTHER ENTITIES" section, infra, we determine that the record reasonably supports the jury's conclusion that Exxon did not prove the liability of Johns-Manville at trial.
[10] Where two permissible views of the evidence exist, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart, 617 So.2d at 883.
[11] One witness who testified about working with Mr. Terrance at Dow, Henry Williams, contradicted himself about whether they actually chipped off insulation at Dow or just cleaned up the insulation after the insulators were finished working with it. This witness also stated that they did a lot of different work at Dow that did not involve picking up insulation, such as breaking up concrete. Another witness, Morris Martin, Jr., testified that he worked with Mr. Terrance at Exxon and Dow. He stated that the Dow work did not involve working with insulation, whereas the Exxon work involved the removal and cleanup of insulation material that was very dusty and it got "all over you . . . your body, [and] your face." This witness testified that he worked with Mr. Terrance at Exxon for two months or more, removing the insulation material every day, "all day long."
[12] Exxon points out that plaintiffs' counsel's remarks are particularly offensive, given the rule that Exxon was procedurally prohibited from presenting evidence to the jury that plaintiffs had received any monies in settlement from other sources. See Rick, 630 So.2d at 1277.
[13] This is the only damage award challenged in this appeal.
[14] See Lawson v. Mitsubishi Motor Sales of America, Inc., 05-0257 (La.9/6/06), 938 So.2d 35, 52.
[15] See Campbell, 870 So.2d at 970-971.