694 So.2d 977 (1996)
Angelina GAUTREAUX, et al.
v.
RHEEM MANUFACTURING COMPANY, et al.
No. 96-C-2193.
Court of Appeal of Louisiana, Fourth Circuit.
December 27, 1996.
Writ Denied March 14, 1997.
Douglas P. Pugh, Sidney A. Backstrom, New Orleans, for Relator.
Robert H. Urann, Nancy Picard, Metairie, for Respondent.
Before BYRNES, LOBRANO, PLOTKIN and MURRAY, JJ., and JAMES C. GULOTTA, J. Pro Tem.
*978 PLOTKIN, Judge.
The plaintiffs filed suit for damages incurred in the death of Charles Gautreaux from lung cancer, whose death is alleged to have been caused by exposure to asbestos during his employment at Rheem Manufacturing Company from 1946 to 1982. Defendant Rheem contended by exception of no cause of action that, under former La.R.S. 23:1031.1(A) 1 (d), the plaintiffs' exclusive remedy is in workers' compensation. The exception was denied and Rheem sought supervisory review. We grant the application to affirm the decision of trial judge denying relator's exception of no cause of action.
Prior to amendment in 1975, Section 1031.1 of Title 23 listed various occupational diseases that were covered by workers' compensation and also listed certain substances that, when they caused disease as a result of occupational exposure, that disease would also be covered by workers' compensation. Lung cancer was not a listed disease and asbestos was not a listed substance although asbestosis was a listed disease. Subsection (d) of the enumerated substances, however, referred to oxygen, nitrogen, and carbon and their compounds.[1] Therefore, relying upon the allegation that asbestos is an oxygen compound for the purposes of this former subsection, relator contends in its exception of no cause of action that the plaintiffs' exclusive remedy is in workers' compensation.
We find no error in the denial of relator's exception of no cause of action. The record contains an extensive dispute over whether asbestos is better characterized as a "mineral" or a "compound" for the purposes of former La.R.S. 23:1031.1(A) 1 (d). The attached affidavit of an expert witness suggests that asbestos would be better described as a mineral in the context of the scientific terminology appearing in the statute. Thus, on this showing, it has not been established as a matter of law that asbestos must be considered an "oxygen compound" within the context for former Subsection (d). Accordingly, the trial judge correctly denied the exception of no cause of action.
It is true that asbestos is a compound which contains oxygen. However, all compounds that contain oxygen may not necessarily be oxygen compounds for the purposes of former Subsection (d). Such a broad interpretation would render several other subsections of the former section redundant. For example, the aliphatic and aromatic cyclic hydrocarbons of Subsections (h) and (i) necessarily contain carbon, and their nitro, diazo, and amino compounds must contain nitrogen as well. See generally Daniel S. Kemp & Frank Vellaccio, Organic Chemistry (1980). Likewise, the hydroxyl group of alcohols, Subsection (j), contains oxygen; the carbonyl of aldehydes and ketones, Subsections (m) and (n), consists of carbon and oxygen; and ethers, glycols, and phenols, Subsections (o) and (p), all contain characteristic carbon and oxygen configurations. See id. chs. 1-3, 9, 20. If oxygen, nitrogen, and carbon and their compounds were intended by the legislature to include all compounds which consist in part of any quantity of oxygen, nitrogen, or carbon, there would have been no need to enumerate further.
The reference to oxygen, nitrogen, and carbon and their compounds in the context of potential sources of occupational disease compensable under a workers' compensation *979 scheme was clearly intended to be construed broadly. However, nearly ninety percent of the over seven million chemical compounds known to exist in 1990 contained carbon. Donald Voet & Judith G. Voet, Biochemistry 19 (1990). This Court is not convinced that the Louisiana legislature intended to classify all of these carbon-containing compounds as carbon compounds within the meaning of Subsection (d). Likewise, relator has not made the showing necessary to establish as a matter of law that all compounds that contain oxygen are oxygen compounds for the purposes of this subsection. Instead, on this record, it appears equally likely that former Subsection (d) was intended to include only those compounds which primarily consist of oxygen, nitrogen, or carbon, such as peroxide, ammonia, or methane, and exclude those compounds in which these elements are less predominant and play less of a characteristic functional role, such as asbestos.
The novel interpretation proposed by the relator is also in conflict with the established jurisprudence arising under this twenty-year-old statute. For example, in Hicks v. Liberty Mut. Ins. Co., 165 So.2d 51, 53 (La.App. 2d Cir.1964), it was noted that flour did not contain, in sufficient quantities to produce emphysema, chemical compounds enumerated in La.R.S. 23:1031.1. However, flour contains considerable quantities of oxygen, nitrogen, and carbon. More recently, the First Circuit applied the same statute at issue in the instant case to hold that asbestos is not included in the list of substances enumerated under former Subsection (A) 1. See Thomas v. Armstrong World Indus., Inc., 95-2222 (La.App.1st Cir. 6/28/96), 676 So.2d 1185, writ denied, 96-1965 (La.11/1/96) 681 So.2d 1272. We are persuaded that the First Circuit was correct in this ruling.
For the foregoing reasons, the judgment denying the relator's exception of no cause of action is affirmed.
WRIT GRANTED; JUDGMENT AFFIRMED.
JAMES C. GULOTTA, J. Pro Tem., concurs.
BYRNES, J., dissents with reasons.
LOBRANO, J., dissents for the reasons assigned by BYRNES, J.
JAMES C. GULOTTA, Judge Pro Tem., concurring.
I concur in the result. We are concerned here solely and entirely with whether the trial judge properly overruled the exception of no cause of action. We are not here dealing with a summary judgment. I decline to evaluate or take judicial notice of a scientific conclusion without the benefit of expert testimony. This matter, in my opinion, requires a trial where expert scientific evidence might be elicited.
Accordingly I concur.
BYRNES, Judge, dissenting with reasons.
I respectfully dissent.
In 1975, La. R.S. 23:1031.1 was amended to define an occupational disease as a disease or illness due to causes or conditions characteristic of or peculiar to a particular trade, occupation, process, or employment. Prior to that, the law listed various occupational diseases that were covered by worker's compensation.[1] It also listed certain substances the occupational exposure to which could cause diseases or illness covered by workers' compensation. Lung cancer was not a listed disease, and asbestos was not a listed substance even though asbestosis was a listed disease. In order to be covered by worker's compensation, it must be either a listed disease or a disease caused by a listed substance. However, the 1952 version of La. R.S. 23:1031.1 (A) 1 (a)(d) includes among occupational diseases "those diseases... when contracted by the employee in the course of his employment as a result of the nature of the work performed ... (1) ... resulting from contact with ... (d) oxygen... and [its] compounds ...." [Emphasis added.] The statute did not delineate a limited *980 list of specific oxygen compounds. The reference to oxygen compounds is non-exclusive, and refers to all compounds containing oxygen. As a matter of undisputed scientific fact the chemical composition of the different types of asbestos includes two oxygen compounds which would bring it within the parameters of La. R.S. 23:1031.1 (A) 1 (d) as it existed in 1952. Therefore, because plaintiff alleges that his lung disease was caused by occupational contact with asbestos, an oxygen compound, his lung disease should be classified as an occupational disease, and plaintiff's exclusive remedy against the decedent's employer, Rheem, is in workers' compensation.
In Thomas v. Armstrong World Industries, Inc., 95-2222 (La.App. 1 Cir. 6/28/96), 676 So.2d 1185, 1187, writ denied, 96-1965 (La.11/1/96), 681 So.2d 1272, the First Circuit rejected the argument that the court should infer the inclusion of asbestos among the list of substances included in La. R.S. 23:1031.1 prior to 1976 because asbestosis was a listed disease and asbestosis is caused by asbestos. The Thomas court found that although asbestos causes asbestosis, that "is not sufficient to overcome the fact that asbestos is simply not specifically written as one of the exclusive substances; nor, is lung cancer provided as one of the diseases that falls under the restricted ambit of a workers' compensation action." The question of whether asbestos is an oxygen compound[2] was never considered by the Thomas court.
The majority also refers to Hicks v. Liberty Mut. Ins. Co., 165 So.2d 51 (La.App. 2 Cir.1964), which is an anomaly out of the Second Circuit. In that case the court focused on the issue of whether flour contains any of the enumerated substances or compounds in sufficient quantity to cause emphysema. The court failed to address the issue of whether flour itself could be considered a compound of one of the enumerated substances. I see no reason why this circuit should feel bound to follow the interpretation of the Hicks case suggested by the majority.
Although the majority in the present case states that it is true that asbestos is a compound which contains oxygen, it does not specifically take judicial notice of that fact but finds that all compounds that contain oxygen are not oxygen compounds for the purposes of La. R.S. 23:1031.1 (A) 1 (d) as a matter of law, and denies Rheem's exception of no cause of action.
Normally no proof may be received on an exception of no cause of action; however, this rule is not absolutely ironclad as certain exceptions have been recognized, for example where documents have been annexed to the petition. Kuebler v. Martin, 578 So.2d 113 (La.1991); Spellman v. Desselles, 596 So.2d 843 (La.App. 4 Cir.1992), writ not considered, 600 So.2d 601 (La.1992), reconsideration granted and writ denied, 605 So.2d 1080 (La.1992); Williams v. Touro Infirmary, 578 So.2d 1006 (La.App. 4 Cir. 1991). An exception also exists to the general rule that no evidence may be introduced to support or controvert an exception based on no cause of action, allowing the court to consider evidence which is admitted without objection to enlarge the pleadings. Woodland Ridge Ass'n v. Cangelosi, 94 2604 (La.App. 1 Cir. 10/6/95), 671 So.2d 508.
The present case raises the interesting question of whether an exception of no cause of action may be granted where determination of a material issue of fact is required but that fact is one of which the court may take judicial notice. Judicial notice is an evidentiary device but it is an exceptional evidentiary device in that it essentially dispenses with the necessity of proof. Taking judicial notice in connection with an exception of no cause of action is analogous to the previously described exceptions to the rule against the admission of evidence on a par with evidence admitted without objection because, as set forth below it is "not subject to reasonable dispute" and "cannot reasonably be questioned." La. C.E. Art. 201 B.
Article 201 B of the Louisiana Code of Evidence provides for judicial notice of two categories of facts "not subject to reasonable dispute," i.e., those facts that are either:
(1) Generally known within the territorial jurisdiction of the trial court; or

*981 (2) Capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

[Emphasis added.]
If it is "not subject to reasonable dispute" as contended by Rheem that asbestos is an oxygen compound, then no purpose is served in requiring Rheem to prove that fact.
The nature of the chemical composition of asbestos falls under the second category of judicially noticeable facts as it requires a "resort to sources." It is not "generally known." Because it requires reference to "sources" outside the realm of general knowledge, its utility in connection with an exception of no cause of action is not as intuitively and apparently obvious as facts that are generally known.
However La.Code of Evidence Article 201 D makes it clear that facts requiring "resort to sources" under Article 201 B(2) are to be treated as just as compelling and convincing as those referred to in Article 201 B(1) as "generally known" because it makes judicial notice of such facts mandatory:
D. When mandatory. A court shall take judicial notice upon request if supplied with the information necessary for the court to determine that there is no reasonable dispute as to the fact. [Emphasis added.]
La.Code of Evidence Article 201 D must refer back primarily to Article 201 B(2) because there should normally be no necessity for supplying the court "with the information necessary" as described in Article 201 D concerning facts "generally known" as described in Article 201 B(1). The fact that Article 201 D makes the taking of judicial notice mandatory in connection with Article 201 B(2) "resort to sources" type facts, further supports the argument that judicial notice of this type is an appropriate exception to the prohibition against the receipt of evidence in connection with a no cause of action exception.
Because judicial notice dispenses with formal proof or evidence where facts are either common knowledge or capable of immediate verification (Acadia-Vermilion Rice Irr. Co., Inc. v. Broussard, 185 So.2d 908 (La.App. 3 Cir.1966)), it does not really violate the prohibition against the receipt of evidence in connection with an exception of no cause of action.
Once relator has requested the court to take judicial notice and has supplied the court with the necessary information in accordance with the language of La.Code of Evidence Article 201 D, it is mandatory that the court take judicial notice, even in connection with an exception of no cause of action. The fact that the La.Code of Evidence makes it mandatory demonstrates the overwhelming force of public policy against the needless waste of judicial resources that would occur were litigants required to go through the pointless exercise of proving that which is not subject to reasonable dispute.
A fact judicially noticed is considered as true without the offer of evidence. Broussard, supra. Therefore, the "sources" referred to in Article 201 B(2) should not be equated with the term "evidence" as used in La. C.C.P. art. 931 which prohibits the introduction of "evidence" in connection with the exception of no cause of action. It is significant that Article 201 employs neither the term "evidence" nor "proof". This further removes judicial notice of "adjudicative facts" from the ambit of "evidence" as prohibited by La. C.C.P. art. 961. We also note that Comment "(d)" under Article 201 contains language indicating that the concept of judicial notice transcends the normal rules of evidence:
This Article should be read in pari materia with Article 104 of this Code, which specifically provides that certain preliminary factual questions "shall be determined by the court" without its being "bound by the rules of evidence." [Emphasis added.]
That judicial notice may be appropriate in situations where the reception of evidence normally may not be, is further supported by the fact that appellate courts which normally may not receive evidence, may exercise judicial notice.
29 Am.Jur.2d Sec. 34 at p. 90 provides in part:

*982 In contrast with judicial notice of matters of common knowledge, notice of ascertainable facts is a comparatively new development in the law.
Numerous cases can be found in which courts judicially notice ... scientific ... facts ...
* * * * * *
Matters not of common knowledge may be judicially noticed if they may be readily determined by an examination of a source whose accuracy cannot be reasonably questioned, such as ... scientific facts which are generally accepted as irrefutable by living scientists.
29 Am.Jur.2d provides in part:
Sec. 26. Use of encyclopedias, textbooks, and dictionaries
Since judicial notice is not limited by the actual knowledge of the individual judge, judges may refresh their memories upon matters properly subject to judicial notice from encyclopedias, textbooks, dictionaries, or other publications of established authenticity.... The mere appearance of facts within such publications does not, however, in most jurisdictions, entitle them to judicial notice unless they are such as to be a part of common knowledge. In some jurisdictions, dictionaries, encyclopedias and similar general reference works may be consulted to determine whether a particular fact is widely enough known to fall within this category of common knowledge. The rule regarding taking judicial notice of facts appearing in texts is different in jurisdictions which adhere to the rule that judicial notice may be taken of facts not of general common knowledge, provided they can be verified to a certainty by reference to competent authoritative sources. [Emphasis added.]
Although the fact that asbestos is an oxygen compound is not a fact generally known, neither is it an arcane scientific fact known only to expert chemists and nobel laureates. It is a fact easily grasped by anyone with a junior high general science course, and certainly by anyone taking a high school chemistry course. It is easily and readily verifiable. Asbestos is defined in the Second College Edition of the American Heritage Dictionary (a reference book for the general public) as magnesium silicate, and a silicate is defined as "any of numerous compounds containing... oxygen...."
This is consistent with the affidavit[3] annexed to plaintiffs' opposition in the trial court to the exception of no cause of action in which plaintiffs' expert, Francis Avery Ragan, Jr., Ph.D. averred that:
(a) Asbestos is a generic name for a group of naturally occurring fibrous mineral silicates[4] of the serpentine and amphibole series. The most common formula is [Mg6(Si4O10)(OH8)].[5]
(b) The definition of asbestos from the Glossary of Geology, American Geological Institute, Washington, DC, p. 41 (1975) is:
a commercial term applied to a group of highly fibrous silicate[6] minerals that readily separate into long, thin, strong fibers of sufficient flexibility to be woven, are heat resistant and chemical inert, and possess a high electric insulation, and therefore are suitable for uses where incombustible, nonconducting, or chemically resistant material is required.
[Emphasis added.]
*983 The only reason given by the trial court for denying Rheem's exception was that it "relied" on Thomas, supra. But as explained previously, that reliance was misplaced. The trial court did not state that it was unable to verify the presence of oxygen in the compound asbestos. The majority agrees that asbestos is a compound which contains oxygen. Accordingly, this court can take judicial notice of the fact that asbestos is an oxygen compound.
Based on the conclusion that judicial notice can be taken of the fact that asbestos is an oxygen compound, the further question at issue is whether it is one of the substances contemplated by the 1952 version of La. R.S. 23:1031.1 (A) 1 (d), which is a matter of law fully within the competence of this court to determine on an exception of no cause of action.
The majority finds that all compounds that contain oxygen may not necessarily be oxygen compounds for the purposes of former Subsection La. R.S. 23:1031.1 (A) 1 (d) pursuant to the 1952 version, stating that such a broad interpretation would render several other subsections of the former section redundant. However, as previously noted the statute did not delineate a limited list of specific oxygen compounds. The reference to oxygen compounds is nonexclusive, and refers to all compounds containing oxygen. Statutes should be interpreted in light of strong public policy. Gulf Oil Corp. v. State Mineral Bd., 317 So.2d 576, 585 (La.1974); Breaux v. Hoffpauir, 95-2933 (La.5/21/96), 674 So.2d 234 (La.1996). The Workers' Compensation Act represents a compromise where the employer is responsible to pay limited benefits regardless of fault and the employee loses his right to fully recover in tort, and to effectuate the surrender of these valuable rights by both the employer and employee, recovery is exclusively limited to benefits under the Act and the employer has immunity from tort actions. Thomas v. State, Dept. of Transp. and Development, 27,203 (La.App. 2 Cir. 10/12/95), 662 So.2d 788. The Act has a dual purpose in its compromise: to pay the injured employee regardless of fault to keep the employee and his or her family from destitution, and to limit the employee's right to recovery in that the employer has tort immunity. Under this scheme which is favored by strong public policy, the list of substances under the statute should be interpreted liberally so that injured employees are covered under the Act.
In Adams v. Time Saver Stores, Inc., 615 So.2d 460 (La.App. 4 Cir.1993), this court adopted the analysis of the Workers' Compensation Law stated by the Third Circuit in Weber v. State, 608 So.2d 1016, 1018 (La.App. 3 Cir.1992), which held:
Courts are to liberally construe the act: The compensation statute, with its amendments, was designed to cover all employees who might reasonably be brought under its paternalistic protection. In [Dick v. Gravel Logging Company, 152 La. 993, 95 So. 99 (1922)], the court said that the statute is humane in its purpose and that its scope should be enlarged and its provisions liberally construed so as to include all services that can reasonably be said to be within the said statute. If it is to be liberally construed so as to include all possible persons when they seek its protection, surely it would not do to say that the provisions of the statute should be restricted when persons, in order to recover in tort, are attempting to have themselves excluded from the coverage of the statute. Spanja v. Thibodeaux [Thibodaux] Boiler Works, 2 So.2d 668, 672 (La.App.Orl.1941).
Not only is public policy concerning the Workers' Compensation Act in general broadly interpreted to provide coverage under the Act, it is reasonable to assume that the Legislature's intent in creating such a long and broad list of substances was an attempt to be as inclusive as possible. To read this list of substances in the narrow manner suggested by the majority would mean that only a fairly narrow and arbitrary list of work-related substances would be covered by the Workers' Compensation Act when logic leads to the conclusion that there is no reason why any one substance causing injury when encountered on the job would be treated differently from any other substance in a workers' compensation context. Had it been the intention of the Legislature to *984 create an exclusive list of a few specifically perceived hazardous substances, it would have been only too easy to do so. But instead of drawing upon a list of known specific toxic substances such as DDT or gasoline, the Legislature invoked a list of broad chemical categories such as oxygen and carbon, which are not intrinsically poisonous or disease related.
In the absence of specific restrictions from the Legislature, I can think of no public policy consideration that would favor providing workers' compensation for exposure to one substance as opposed to another, and I have no reason to believe that the Legislature intended to draw such distinctions. Because there is no logical basis for drawing such distinctions, the fact that the broad interpretation of the statute which I advocate would cover virtually any substance a worker is likely to encounter on the job is consistent with the liberal approach to the statutory construction of workers' compensation provisions in general, and the most logical interpretation of this particular statute. Therefore, the majority's complaint that the viewing of asbestos as an oxygen compound would open the door to consideration of all substances, is not the weakness, but the strength of my position. The focus of this court should be on the work related aspect of the substance rather than on a debate over exactly how many oxygen atoms are in asbestos.
Pursuant to the 1952 version of La. R.S. 23:1031.1 (A) 1 (d), I would conclude that accepting the allegations of plaintiffs' complaint as true for purposes of this exception, that the decedent contracted the disease "in the course of his employment as a result of the nature of the work performed ... resulting from contact with oxygen and [its] compounds," i.e., asbestos, so that his lung disease must be classified as an occupational disease as a matter of law, and plaintiffs' exclusive remedy against decedent's employer, Rheem, is in workers' compensation for causes of action based on claims of negligence and strict liability.
Accordingly, I would reverse the judgment of the trial court, and would maintain Rheem's exception of no cause of action. I would remand the action to the trial court to give the plaintiffs an opportunity to amend their petition pursuant to La. C.C.P. art. 934. If the plaintiffs did not amend their petition, I would dismiss with prejudice the tort action against Rheem based on negligence and strict liability.
LOBRANO, J., dissents for the reasons assigned by BYRNES, J.
NOTES
[1] Former Subsection (A) 1 listed the following substances:

(a) the halogens, halogen compounds, and halogenated hydrocarbons
(b) alkaline materials
(c) arsenic, phosphorus, selenium, sulfur, tellurium, and their compounds
(d) oxygen, nitrogen, carbon, and their compounds
(e) cyanides and cyanogen compounds
(f) lead and lead compounds
(g) metals other than lead and their compounds.
(h) aliphatic hydrocarbons and their nitro, diazo and amino compounds
(i) aromatic and cyclic hydrocarbons and their nitro, amino and other compounds
(j) alcohols
(k) organic and inorganic acids and their derivatives and compounds
(l) esters of aliphatic, aromatic and inorganic acids
(m) aldehydes
(n) ketones
(o) ethers, glycols, and glycol ethers, and their compounds
(p) phenol and phenolic compounds
[1] Rheem concedes that the applicable statute in this case is the pre-1975, post-1952, amendment.
[2] The silicate group, (SIO), and hydroxyl (OH).
[3] Rheem makes the companion argument that asbestos is a listed substance because asbestos is a compound containing the metal magnesium and compounds of metals are listed substances under La. R.S. 23:1031.1(A) 1 (g). Although Dr. Ragan's affidavit does not specifically dispute the fact that asbestos is a compound containing a metallic element, it does cloud the issue by denying that asbestos is a metal itself. Therefore, we have confined this opinion to the question of whether asbestos is an oxygen compound, which is both undisputed and beyond dispute.
[4] As stated previously "silicates" are compounds containing oxygen.
[5] Anyone having taken high school chemistry can recognize that the "O's" in the chemical formula indicate that this is an oxygen compound.
[6] As stated previously "silicates" are compounds containing oxygen.