*1095 VICTORY, J.,
dissenting.
Iil dissent from the majority’s holding that mesothelioma is not a compensable occupational disease under the pre-1975 version of the Louisiana Workers’ Compensation Act (the “Act”).
The issue before the Court involves an examination of the 1952 version of La. R.S. 23:1031.1 to determine if asbestos is an oxygen compound or a metal compound under that statute. The majority recites the correct rules of statutory construction, namely, that “[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences, the law is applied as written, and no further interpretation may be made in search of legislative intent.” However, it nonetheless, purporting to “utiliz[e] the principle of ‘clear and unambiguous’ statutory construction,” Op. at 1079, interprets the statute by searching for the intent of the legislature. That is prohibited under our statutory rules of construction. La. C.C.P. art. 9.
The sole issue before the Court is whether, under the clear and unambiguous language of the statute, asbestos is an oxygen or metal compound. Amazingly, while noting that whether asbestos is an oxygen or metal compound is a “hotly contested issue,” the majority determines that it “do[es] not have to resolve this issue and offer no opinion on the resolution of that question.” Op. at 1080, n. 8. However, the |2main reason we granted this writ application was to resolve this “hotly contested issue.”
In addition to applying the law as written when its application does not lead to absurd consequences, courts must take into account the basic history and policy of the compensation movement when interpreting the Act. Roberts v. Sewerage & Water Bd. of New Orleans, 92-2048 (La.3/21/94), 634 So.2d 341, 345. Since the inception of the Act, one of the strongest and most recognized policies in Louisiana law has been that’ the Act is to be interpreted broadly in favor of finding coverage for the injured employee. Breaux v. Hoffpauir, 95-2933 (La.5/21/96), 674 So.2d 234 (“In light of the policies behind the Workers’ Compensation Act [to keep the injured employee from destitution], this Court has adopted special rules for interpreting its provisions such that to effectuate the remedial policy of the Act, its provisions should be liberally construed in favor of the claimant”); Roberts, supra; Hall v. Pipe Line Service Corp., 233 La. 821, 98 So.2d 202 (1957); Bean v. Higgins, Inc., 230 La. 211, 88 So.2d 30 (1956); Meyers v. Southwest Region Conference Ass’n of Seventh Day Adventists, 230 La. 310, 88 So.2d 381 (1956) (language of statute “should be considered in its broadest possible aspect”); Johnson v. Cabot Carbon Co., 227 La. 941, 81 So.2d 2 (1955); Caddo Contracting Co. v. Johnson, 222 La. 796, 64 So.2d 177 (La.1953) (all statutory provisions of the Act are to be given a liberal construction); Dick v. Gravel Logging Co., 152 La. 993, 95 So. 99(1922) (the provisions of the Act are to be liberally construed so as to include all services that can reasonably be said to come within them). These coverage provisions, which include the provisions of La. R.S. 23:1031.1, must be interpreted broadly no matter which party is seeking to apply them, whether it be a plaintiff seeking coverage under the Act, or a defendant arguing that the plaintiff is covered under the Act.
IsThe question is whether, under the statute as written and interpreted broadly, asbestos is an oxygen compound or a metal compound. If the answer to this question is clear and unambiguous and its application does not lead to absurd consequences, we must apply the law as written. Looking at the language of the statute itself, which is the starting point in statutory *1096 interpretation, we can see that the language is clear and unambiguous as it provides workers’ compensation benefits for certain named diseases, and for diseases relating from contact with, among other things, “oxygen, nitrogen, carbon and their compounds” and “metals other than lead and their compounds.” There is simply no ambiguity in those words. As mesothelio-ma was not a listed disease under the statute, the only issue here is whether asbestos is in fact an oxygen compound or a metal compound and the evidence presented in this case centered around that issue.
In support of their positions on this issue, both sides presented expert testimony in the form of affidavits or otherwise. The defendants presented the affidavit of Harry E. Ensley, Ph.D., an Associate Professor of Chemistry at Tulane University, who testified that all forms of asbestos are oxygen compounds and metal compounds. He defined a “compound” as follows:
Compound — “A substance composed of atoms or ions of two or more elements in chemical combination. The constituents are united by bonds or valence forces. A compound is a homogeneous entity where the elements have definite proportions by weight and are represented by a chemical formula. A compound has characteristic properties quite different from those of its constituent elements.” Hawley’s Condensed Chemical Dictionary, 12th Ed., Richard J. Lewis, Sr., Van Nostrand Reinhold Company, New York, 1993. See Attachment G.
Webster’s II New College Dictionary, Houghton Mifflin Company, New York, 2001 (Attachment I), and The American Heritage Dictionary of the English Language, Houghton Mifflin Company, New York, 1981 (Attachment H), each contain the following definition: “A pure, macroscopically homogeneous substance consisting of atoms or ions of |4two or more different elements in definite proportions, and usually with properties unlike those of its constituent elements.”
He defined a “mineral” as “an element or chemical compound that is normally crystalline and that has been formed as a result of geological processes,” and presented other authoritative evidence conclusively establishing that minerals must always be either chemical elements or chemical compounds, which means it is either one type of atom (an element) or two or more atoms or ions of two or more different elements in definite proportions (a compound).[1] He described chrysotile, which accounted for 90% of the asbestos *1097 mined worldwide, as both a compound and a mineral, with the chemical formula Mg3Si209H4, meaning it is a compound composed of four different elements-magnesium, silicon, oxygen, and hydrogen, always in definite proportion. He further identified each of the other forms of asbestos as belonging to the amphibole group, including amosite, actinolite, croci-dolite, and anthophyllite, as being both oxygen and metal compounds. In this group, certain ions substitute for each other within the various types of asbestos but 1,-,they always exist in definite proportion.[2] He identified all of these types of asbestos as being both oxygen and metal compounds. He also provided numerous references in authoritative literature where asbestos is classified as a compound.
Plaintiff introduced the affidavits of Barry Dellinger, Ph.D., and Rene A. DeHon, Ph.D. In Dr. DeHon’s opinion, for which he cites numerous sources, asbestos is a mineral, specifically a silicate,[3] one of the ten major groups of minerals. However, contrary to Dr. Ensley’s opinion that all minerals are either elements or compounds and that asbestos is both an oxygen and a metal compound, Dr. DeHon disagreed, stating that he had never seen asbestos classified as either an oxygen compound or a metal compound in geological or mineralogical literature. In his view, an oxygen compound referred only to a “simple oxygen compound” composed of a cation, i.e., a positively charged ion, and oxygen, substances such as water, H20, that are significantly composed of oxygen. Further, he stated that although asbestos contains the element oxygen, it exhibits none of the chemical properties of elemental or molecular oxygen. For those same reasons, he did not believe that asbestos was a metal compound as it was not significantly composed of metal and does not exhibit the properties of metals. Dr. Del-linger also disagreed with Dr. Ensley, stating that there was no universal chemical definition of a compound, but that in common usage it is “a substance containing two or more elements chemically bound in fixed proportions.” In his view, the fact that different forms of asbestos have variable compositions and can be expressed with many chemical formulas means they cannot |fibe compounds and are instead minerals. Dr. Dellinger explained that La. R.S. 23:1031.1(A)(1) “does not use terminology that has practical meaning or relevance in the field of chemistry.” He further stated that a chemist would normally use the term metal or oxygen compound to refer to a substance that has a significant concentration of metal or oxygen or whose properties are governed by these elements. Finally, he stated that if compounds were defined in the manner set forth by Dr. Ensley, then the statute would include virtually all of the millions of possible chemical compounds and that in his view, “no reasonable person or even a poorly trained scientist would write a statute that they intended to be interpreted to include so many compounds.”
Dr. Ensley took issue with Dr. Dellinger’s statement that asbestos cannot be a *1098 compound because it has many chemical formulas, stating that asbestos is mined from the earth, the variations in analysis are due to impurities, some of which are part of the crystal structure and others are extraneous materials. In addition, there are several different types of asbestos which is why each type has a different chemical formula. Further, if as Dr. Del-linger argues, asbestos is a mineral, Dr. Ensley pointed out that it necessarily also must be a compound because it is undisputed that a mineral is always either an element or a compound, and it must necessarily contain atoms in specific ratio proportions because that is a key aspect of the definition of a mineral. Finally, the definition of a compound cited by Dr. Ensley states that a compound has characteristic properties quite different that those of its constituent elements.
Plaintiff also presented the testimony of several live witnesses. Dr. Richard Lemon, the former Deputy Director of the National Institute for Occupational Safety and Health, defined asbestos as a mineral fiber found in the earth’s surface with various chemical formulations depending on where it is found and in what type of 17mineralogical strata it is found. Dr. Arnold Brody explained that “scientists define asbestos as a mineral, and the damaging aspect of asbestos is its nature as a fiber.” Dr. Victor Roggli, described asbestos as a group of mineral fibers.
Neither of the lower courts analyzed the above testimony to determine whether asbestos was an oxygen or metal compound. The court of appeal relied solely on its prior decision in Terrance v. Dow Chemical Co., 06-2234 (La.App. 1 Cir. 9/14/07), 971 So.2d 1058, writ denied, 07-2042 (La.12/14/07), 970 So.2d 534, which it declined to “revisit.” Rando v. Anco Insulations, Inc., et al., 07-2093 (La.App. 1 Cir. 5/2/08), 2008 WL 2068080 (unpublished). As stated in the majority opinion, the courts of appeal have split on this issue. The Second and Fifth Circuits have held that all diseases resulting from an employee’s contact with asbestos are occupational diseases covered by the 1952 Act. In Brunet v. Avondale Industries, Inc., 99-1354 (La.App. 5 Cir. 12/5/00), 772 So.2d 974, writ not considered,, 01-0171 (La.3/23/01), 787 So.2d 1006, the plaintiff contracted lung cancer resulting from contact with asbestos and a jury awarded him tort damages. In its answer to plaintiffs appeal, Avondale urged that plaintiff was limited to workers’ compensation because asbestos was both an oxygen and a metal compound. The Fifth Circuit considered the affidavit of Dr. Ensley, essentially the same one offered in this case, and found that the scientific evidence established that asbestos is an industrial term used to describe a group of six minerals, all of which consist of oxygen, silica and metal. According to Dr. Ensley’s affidavit, asbestos is not only a compound of oxygen and metal, but it is mostly oxygen and metal, whether measured by weight or number of atoms, and if either were removed, it would no longer be asbestos. The court looked to the definition of compound offered by Dr. Ensley in this case, see p. 1072-73, supra, and his statement that there is no distinction in chemistry between the terms “oxygen and its compounds,^[¿‘oxygen-containing compounds,” and “compounds that contain oxygen.” The court dismissed the opinion of another expert who testified that asbestos could not be an oxygen compound because it did not display the reactivity typical to oxygen after pointing out that the textbook definition of compound recognizes that the compounds may not display the same chemical characteristics of their constituent elements. In addressing the plaintiffs argument that the legislature could not have meant these categories to be read so *1099 broadly because then “everything” would be included, the court framed the issue as follows: “[t]he real question is not whether asbestos is an oxygen compound from a chemical perspective, because clearly it is, but rather did the legislature intend to include substances such as asbestos in categories such as oxygen and metal compounds.” Id. at 983. In answering the question in the affirmative, the court stated:
We consider persuasive the fact that asbestosis, an occupational disease caused by asbestos exposure, is included as a compensable occupational disease, as evidence that the legislature intended to include all occupational diseases caused by asbestos exposure. It is well settled that the provisions of the Workers’ Compensation Law must be given a liberal interpretation in order to effectuate its beneficent purpose of relieving workmen of the economic burden of work-connected injuries by diffusing the cost in the channels of commerce. Lester v. Southern Cas. Ins. Co., 466 So.2d 25 (La.1985). Given the focus of the workers’ compensation scheme, which is to cover employees who are injured in the course and scope of them employment under the compensation scheme, it is' not logical that the legislature intended to provide coverage for only some of the workers made sick from asbestos exposure, and not others. The legislature’s action in specifically listing the disease asbestosis could be attributed to their limited knowledge of the disease processes caused by asbestos exposure (and their latency) at the time the statute was enacted (1958). Plaintiffs’ interpretation of the workers’ compensation statutes creates a scenario where side-by-side workers, exposed to the same disease causing agent (here, asbestos), will be covered differently depending on the specific disease they develop. Such a result is contrary to the spirit and purpose of the workers’ compensation scheme. Plaintiffs cancer, if caused by asbestos exposure while in the course and scope of his employment, should be covered under workers’ compensation the same as his asbestosis. This court finds that asbestos is a pathogen included in the list in R.S. 23:1031.1 (1958), and therefore, plaintiffs exclusive remedy for an occupational | ^disease alleged to have been caused by asbestos is under the workers’ compensation scheme.
Id. at 983-84 (footnotes omitted).[4]
The Second Circuit has also determined that asbestos is both an oxygen and a *1100 metal compound under the 1952 version of the Act. In Adams v. Asbestos Corp., Ltd., 39,952 (La.App. 2 Cir. 10/28/05), 914 So.2d 1177, the trial court granted the defendant’s motion for summary judgment on that issue based on the affidavits of Drs. Ensley and DeHon. In considering DeHon’s affidavit, the court of appeal disagreed with DeHon’s attempt to differentiate between an oxygen or metal compound and a compound containing those elements, finding no difference in the two for purposes of statutory construction. 914 So.2d at 1182. The court also noted that his explanation of the chemical composition of asbestos shows that it contains oxygen and metal ions and that these are combined in fixed proportions to create silicate minerals, a form of which is asbestos. Id. Thus, the court found that both 11flexperts’ opinions showed asbestos to be a compound of oxygen and of metal under statute. Id. Finally, the court relied on Brunet to find the intent of the legislature was to include all occupational diseases covered by asbestos. Id,[5]
However, in a long line of cases, the First Circuit has consistently held that because asbestosis was not a listed disease causing substance, and because lung cancer and mesothelioma are not listed diseases, that plaintiffs with those diseases have an action in tort. In the first of those cases, Thomas v. Armstrong World Industries, Inc., 95-2222 (La.App. 1 Cir. 6/28/96), 676 So.2d 1185, writ denied, 96-1965 (La.11/1/96), 681 So. 1272, the court of appeal overturned the trial court’s grant of defendant’s exception of no cause of action, wherein defendant argued that plaintiff contracted asbestosis which later led to lung cancer and that the inclusion of asbestosis in the statute leads to the logical conclusion that it was not necessary to include asbestos in the statute. The court of appeal ruled as follows:
While Anco presents an interesting argument to support the inferential inclusion of asbestos in the provided list of substances within La. R.S. 23:1031.1, it is not sufficient to overcome the fact that asbestos is simply not specifically written as one of the exclusive substances; nor, is lung cancer provided as one of the diseases that falls under the restricted ambit of a workers’ compensation action. The focal issue to be judicially determined is whether the lung cancer was independently caused by asbestos or, alternatively, whether it was a progression of the asbestosis disease that Mr. Thomas had simultaneously contracted. See Wallace v. Kaiser Aluminum & Chemical Corporation, 586 So.2d 149 (La.1991). Defendant is not precluded from demonstrating at the tri *1101 al level that the asbestosis initiated the lung cancer and, therefore, the lung cancer would be encompassed within the diseases limited to workers’ compensation. However, this is not a legal conclusion that can be determined from the face of the pleadings alone.
676 So.2d at 1187; see also Johnson v. Ashland Oil, 96-0323 (La.App. 1 Cir. 12/20/96), 684 So.2d 1156, writ denied, 97-206 (La.3/14/97), 690 So.2d 37 (following Thomas, supra, and holding that because asbestos was not a listed substance and mesothelioma was not a listed disease, defendant’s motion for summary judgment claiming the Act provided the exclusive remedy should be denied). In Terrance, supra, the parties stipulated that asbestos is a compound of both oxygen and metal. The court noted the split in the circuits regarding whether mesothelioma fit within the statute’s definition of occupational disease, but determined that it was bound and persuaded by the line of cases holding that it was not. In so doing, the court reasoned as follows:
While asbestos does contain oxygen and metal, all compounds that contain oxygen and metal are not necessarily covered substances for purposes of former LSA-R.S. 23:1031.1. The broad interpretation proposed by Exxon would allow any disease resulting from contact with an compound containing oxygen or metal to be covered under the LWCA. We believe this inferential-inclusion interpretation goes far beyond the intentions of the legislature.
971 So.2d at 1066; see also Spillman v. Anco Insulations, Inc., 07-0763 (La.App. 1 Cir. 9/9/08), 994 So.2d 132 (jurisprudence of First Circuit rejects broad interpretation that just because asbestos is a compound of oxygen and metal, that mesotheli-oma is a covered disease). The Fourth Circuit has likewise held that asbestos is not a substance covered by the pre-1975 amendment. In Gautreaux v. Rheem Mfg. Co., 96-2193 (La.App. 4 Cir. 12/27/96), 694 So.2d 977, 978, writ denied, 97-0222 (La.3/14/97), 690 So.2d 39, the court affirmed the trial court’s denial of defendant’s exception of no cause of action, finding that “[t]he record contains an extensive dispute over whether asbestos is better characterized as a ‘mineral’ or a ‘compound’ for the purposes of former La. R.S. 23:1031.1(A)l(d)” and therefore, “on this showing, it has not been established as a matter of law that asbestos must be considered an ‘oxygen compound’ within the context for [sic] former Subsection (d).” The court then noted that asbestos is a compound that |12contains oxygen, but found that all compounds that contain oxygen may not necessarily be oxygen compounds for purposes of former Subsection (d). 694 So.2d at 978; see also Calloway v. Anco Insulation, Inc., 98-0397 (La.App. 4 Cir. 3/25/98), 714 So.2d 730, writ denied 98-1034 (La.11/19/99), 749 So.2d 666, and Matrana v. Avondale Industries, Inc., 01-1505 (La.App. 4 Cir. 8/27/01), 803 So.2d 59 (both following Gautreaux ).[6]
*1102 | isUpon review of the language of the statute, the rules of statutory construction, the scientific evidence presented, the prior jurisprudence discussing this issue, and the history and policy of the Act, especially the policy that the Act is to be interpreted broadly in favor of coverage, the following is apparent. First is the language of the statute, which states that diseases caused by contact with “oxygen, nitrogen, carbon, and their compounds” or “metals other than lead and their compounds” are covered occupational diseases under the 1952 Act. The parties presented expert testimony and scientific evidence in support of their positions. A review of that evidence establishes that asbestos is a compound of both oxygen and metal in that each form of asbestos is a substance composed of atoms or ions of two or more elements, either oxygen or a metal, in definite proportion and represented by a chemical formula. Plaintiffs experts testified that asbestos is not a “compound” but rather a “mineral.” However, the scientific textbooks and other data all defined a mineral as either an element or a compound formed as a result of geological processes. Therefore, if asbestos is in fact a mineral, then it is necessarily also a compound. The views of plaintiffs experts that oxygen or metal compounds are limited to those which are mostly oxygen or mostly metal was unsupported by any scientific evidence, and, other experts testified and presented evidence that all forms of asbestos were at least 50% oxygen by number of atoms and by weight they were more oxygen than anything else. Thus, given the evidence showing that asbestos is an oxygen and metal compound and considering the plain language of the statute, the statute is clear and unambiguous. There are simply no limiting or exclusionary words which would limit the coverage to only certain types of oxygen and metal compounds. Further, such an interpretation is consistent with the policy that the Act is to interpreted broadly in 114favor of coverage. For decades, the Act has been interpreted to pro *1103 vide workers’ compensation coverage for employees in accordance with the policy to interpret the Act broadly. Interpreted broadly, there can be no doubt that asbestos is both an oxygen and a metal compound. In addition, this interpretation does not lead to absurd results, as it merely leads to coverage of illnesses and diseases resulting from contact with oxygen and metal compounds encountered in the workplace, no matter how many there are. It would also result in all diseases caused by asbestos being covered under the 1952 Act, not just asbestosis.[7] It is inconsistent to hold that different disease manifestations of the same work-related asbestos exposure should be treated differently under the Act. The majority’s interpretation leads to absurd consequences in that the statute would cover a less severe disease (asbestosis) caused by exposure to asbestos and not cover a co-worker suffering from a much more serious disease (meso-thelioma) caused by exposure to the same asbestos. In addition, the proposition that inclusion of asbestos as an oxygen or metal compound would mean that a huge number of substances would be covered is unpersuasive, given that most of these substances either would never appear in the workplace or would not 11ficause a disease.
Finally, a review of the jurisprudence from the courts of appeal that actually discussed and analyzed, the issue of whether asbestos is an oxygen or metal compound reveals that each of these courts either determined, or it was stipulated, that asbestos was in fact an oxygen compound, or a compound containing oxygen, with some finding that it was also a metal compound. This is true even among the courts that ultimately determined that lung cancer and mesothelioma were not covered diseases. For instance, in Gau-treaux, the only Fourth Circuit case to actually discuss whether asbestos was an oxygen or metal compound, the court found that “[i]t is true that asbestos is a compound which contains oxygen ... [hjowever, all compounds that contain oxygen may not necessarily be oxygen compounds for the purposes of former Subsection (d).” 694 So.2d at 978. In Terrance, supra, the only First Circuit case to have discussed the issue, the parties stipulated that asbestos was a compound of both oxygen and metal, but the court nonetheless found that all compounds that contain oxygen and metal are not necessarily covered substances because this would allow any disease resulting from contact with any compound containing oxygen or metal to be covered under the Act. 971 So.2d at *1104 1064, 1066. As can be seen, while recognizing that asbestos was a compound of oxygen, those courts proceeded to read the statute very narrowly, finding that “compounds” did not mean all compounds, and/or that a compound containing oxygen was not the same as an oxygen compound. There is no reasonable scientific basis for such a distinction. Further, courts are bound to intexpret the Act broadly in favor of coverage and are not allowed to stray from the unambiguous language of the statute in order to determine legislative intent. The broad and straightfoxward interpretation given the statute by the courts in Brunet |lfiand Adams is much more in line with the intent of the statute and the policy underlying the Act.
The statutory language, the scientific evidence presented, and the history and policy behind the 1952 Act, especially that the Act must be interpreted broadly in favor of coverage, all establish that asbestos is an oxygen and/or metal compound for purposes of La. R.S. 23:1031.1. Accordingly, in my view, a person who contracts meso-thelioma as a result of contact with asbestos in the course of his employment and as a result of the nature of the woi’k performed is entitled to workers’ compensation benefits as his exclusive remedy. Because the plaintiff in this case, Ray Rando, contracted mesothelioma as a result of contact with asbestos in the early 1970’s, his exclusive remedy is in workers’ compensation, not in tort.
For the foregoing reasons, I respectfully dissent.

. Dr. Ensley cites Cornelius S. Hurlbut, Jr., Dana's Manual of Mineralogy, (16th Ed. 1952), p. 5, as follows:
Perhaps the most important and significant limitation placed by the mineralogist upon his definition of a mineral is that it must be a chemical element or compound. Even though considerable variation in composition within the framework of tire formula is permissible, we must be able to express the composition of a mineral by a chemical formula. Thus all mechanical mixtures, even if quite uniform and homogeneous, are eliminated. This restriction on the definition of a mineral arises from the mineralogist's consistent picture of the structure of a crystalline solid as an indefinitely extended framework of atoms, ions, or groups of atoms arranged in regular geometric pattern. Such a solid must of necessity obey the laws of definite and multiple proportions and must be as a whole electrically neutral; hence it must have a composition expressible by a formula. There is no prohibition inherent in this restriction, however, on interchange of similar atoms of different kinds within the framework of the structure as long as the structure is kept intact and the condition of the electrical neutrality met. Hence, minerals may, and commonly do, vary widely in composition within a single mineral species by substitution of one kind of atom for another in the structure.

. Dr. Ensley stated that the chemistry of the asbestos forms in the amphibole group is more complicated than that of chrysotile. Not only do the compounds have many more constituent atoms, but they also belong to mineral series which cover a variety of chemical compounds. The mineral series are the result of substitution of one ion by another ion of similar size. Numerous sources cited by him indicate that this variability in composition does not contradict the law of definite proportions.

. However, a “silicate” is generally defined as “any of numerous compounds containing silicon, oxygen, and one or more metals." The American Heritage Medical Dictionary, (2007), Houghton Mifflin Company.

. I point out that during the effective life of this version of the statute (1952-1975), all other Louisiana appellate courts determining whether a non-listed substance was covered under the Act looked to see whether its constituent compounds were listed; if so, then the substance was deemed to be covered. See Bryant v. Magnolia Garment Co. Inc., 307 So.2d 395, 397 (La.App. 2 Cir.1975) ("An occupational disease claimant is not limited to recovery for diseases designated in the statute by name and may recover for poisoning or other disease resulting from contact with enumerated chemicals or compounds, even though the disease is not one of those named”); Zeringue v. Fireman's Fund Am. Ins. Co., 271 So.2d 613 (La.App. 1 Cir.1972) (bullous emphysema not a listed disease, but the spray paint fumes that caused the disease contained enough enumerated substances to make his illness compensable as an occupational disease); Bernard v. Louisiana Wild Life & Fisheries Comn., 152 So.2d 114 (La.App. 3 Cir.), writ refused, 244 La. 664, 153 So.2d 881 (1963) (chemical spray not listed by name but disease caused by exposure to it still covered); Riley v. Avondale Shipyards, 305 So.2d 742 (La.App. 4 Cir.1974) (detergent to which employee was exposed was not a listed substance, but "the detergent did contain compounds of phosphorus, sulfur, and metals, included in R.S. 23:1031.1.”); Austin v. Travelers Ins. Co., 79 So.2d 383, 384 (La.App. 2 Cir.1955) ("Plaintiff complains to be suffering from the effect of TNT poisoning, *1100 which clearly brings him under the above quoted wording of the statute, for according to uncontroverted testimony of one of the expert witnesses in the case: 'TNT is the common name for 3, 4, 6-trinitrotoluene, an aromatic nitro compound,” and this is included under La. R.S. 23:1031. l(A)(l)(i).) These decisions, from all four Louisiana appellate courts then existing (the Fifth Circuit was not created until 1981), all date from the time period when the 1952 version of the Act was in effect and all considered the chemical composition of the disease-causing agent to determine if it was a compound of a listed substance. Further, in these cases, the analysis centered around whether the substances merely contained one of the listed substances or their compounds, not whether they were technically a "compound.” Cf. Bernard, supra (which apparently just assumed the chemical spray was a covered substance with no analysis).

. In Graves v. Riverwood intern. Corp., 41,810 (La.App. 2 Cir. 1/31/07), 949 So.2d 576, writ denied, 07-630 (La.5/4/07), 956 So.2d 621, a case involving mesothelioma based on asbestos pre-dating the 1952 statute such that this issue was not determinative, the Second Circuit noted the split in the circuits regarding this issue and its prior holding in Adams.

. Judges Byrnes dissented in Gautreaux, with Judge Lobrano joining in his reasoning, arguing that the court should have taken judicial notice of the fact that asbestos is an oxygen compound:
Although the fact that asbestos is an oxygen compound is not a fact generally known, neither is it an arcane scientific fact known only to expert chemists and nobel laureates. It is a fact easily grasped by anyone with a junior high general science course. It is easily and readily verifiable. Asbestos is defined in the Second College Edition of the American Heritage Dictionary (a reference book for the general public) as magnesium silicate, and a silicate is defined as "any numerous compounds containing ... oxygen. ...” (Emphasis added).
694 So.2d at 982. In determining whether asbestos was one of the substances meant to *1102 be covered by the pre-1952 amendment, the dissenters noted the public policy that the Act must be broadly interpreted to provide coverage under the Act, and that because the statute did not include specific substances, but instead included a non-exclusive reference to oxygen compounds, the statute should be interpreted to include all oxygen containing compounds, reasoning as follows:
[t]o read this list of substances in the narrow manner suggested by the majority would mean that only a fairly narrow and arbitrary list of work-related substances would be covered by the Workers’ Compensation Act when logic leads to the conclusion that there is no reason why any one substance causing injury when encountered on the job would be treated differently from any other substance in a workers’ compensation context. Had it been the intention of the Legislature to create an exclusive list of a few specifically perceived hazardous substances, it would have been only too easy to do so....
In the absence of specific restrictions from the Legislature, I can think of no public policy consideration that would favor providing workers' compensation for exposure to one substance as opposed to another, and I have no reason to believe that the Legislature intended to draw such distinctions. Because there is no logical basis for drawing such distinctions, the fact that the broad interpretation of the statute which I advocate would cover virtually any substance a worker is likely to encounter on the job is consistent with the liberal approach to statutory construction of workers' compensation provisions in general, and the most logical interpretation of this particular statute. Therefore, the majority's complaint that the viewing of asbestos as an oxygen compound would open the door to consideration of all substances, is not the weakness but the strength of my position. The focus of this court should be on the work related aspect of the substance rather than on a debate over exactly how many oxygen atoms are in asbestos.
Id. at 983-984. (Byrnes dissenting, joined by Lobrano).

. One commentator has also suggested that an aggravation of a covered disease that takes the form of a non-listed disease should be compensable under the Act:
Apart from the provision that “no disease listed herein shall be construed to include tuberculosis within its scope,” the provision is silent as to whether unlisted diseases which are caused or activated through the contraction of a listed disease shall be regarded as compensable. When the initial injury is "accidental” our courts have consistently allowed compensation for all disease complications which are caused in fact by the accident and injury. Similar reasoning would suggest that all aggravations of listed occupational diseases should be com-pensable, even if the aggravation takes the form of a non-listed disease.
Wex Malone, Louisiana Workmen's Compensation Law and Practice, § 218, p. 53 (1960 Pocket Part). Application of this analysis would result in mesothelioma which started out as asbestosis, which is commonly the case, being covered under the Act. See also Thomas v. Armstrong World Industries, supra, holding that although asbestos was not a listed substance and lung cancer was not a listed disease, ”[d]efendant is not precluded from demonstrating at the trial level that the asbestosis initiated the lung cancer, and, therefore, the lung cancer would be encompassed within the diseases limited to workers’ compensation.”